GLADNEY, Judge.
James A. Irvin, individually and on behalf of his then minor son, filed this suit naming as co-defendants Elaine Savelle, individually and for and on behalf of her minor son, William F. Gibson, Jr., State Farm Mutual Automobile Insurance Company, liability insurer of Elaine Savelle, and Aetna Casualty & Surety Company liability insurer of the automobile owned by Billy J. Long.
The demand seeks recovery for damages sustained by Ronald Lee Irvin as a result of an automobile accident in which he was involved on September 29, 1972 while riding as a guest passenger in an automobile owned by Billy J. Long and being operated at the time of the accident by William F. Gibson, Jr., the then minor son of defendant Elaine Savelle.
Aetna moved for a summary judgment, contending that it could not be held responsible for any acts of negligence on the part of defendant Gibson while operating the Long vehicle due to a “student risk endorsement” contained in its policy. The motion for summary judgment was granted and the issues so raised are not before this court as part of this appeal. Ronald Lee Irvin became a major subsequent to the date of filing the original petition and the petition was modified so as to reflect this fact.
The record reveals that the instant matter and the case of Allen Michael Hennigan vs. Elaine Savelle, et al were tried simultaneously with the Hennigan case being tried to a jury and the Irvin case being tried before the judge alone. Both the district judge and the jury found in favor of the defendants on the question of liability.
On the morning of the accident plaintiff and his three companions, Gibson, Allen Michael (Buzzy) Hennigan, and Terry Long, set out on a trip from Shreveport to Baton Rouge to attend a Fair Park High School football game to be played that night. Gibson and Terry Long were at that time seniors at Fair Park High School, and Hennigan had graduated from that school the year before. The trip had apparently been planned the night before and was to be made in a 1970 Ford automobile owned by Billy J. Long, but which his son Terry used extensively, with the owner’s consent and permission.
*868 Prior to starting the trip the four young men purchased approximately one case of beer at a convenience store located near Fair Park High School. The actual purchase was made by Hennigan, the only one of legal age, with money provided by all four. The trip commenced with Terry Long driving the automobile owned by his father. The boys apparently had the intention of taking the same route to Baton Rouge as a group of Fair Park High School chartered buses carrying other students to the football game, and, upon leaving the convenience store, were of the opinion that they were preceding the buses on this route.
When the 1970 Ford vehicle reached a point just south of the Shreveport city limits on Louisiana Highway 1, it became apparent to the passengers that Terry Long, the initial operator, was drinking beer heavily. While the testimony is not altogether clear as to whether he was actually intoxicated at this time, it was apparent to the occupants that if he continued drinking in the manner he was at that time, he would not be able to safely drive all the way to Baton Rouge. At this point the plaintiff volunteered to take the wheel, his testimony being as follows:
“A. Well, I knew that Terry was going to drink more than — you know, more than it would be safe for him to drive, so I told them that I would be glad to drive if they wanted to drink because I wasn’t going to drink. I had a beer in my hand just so they wouldn’t say, ‘Here, have a beer’ all the time, you know, the way boys will do.”
Following this change of drivers, the group proceeded toward Natchitoches on Louisiana Highway 1. At some point between Shreveport and Natchitoches, and while Lee Irvin was driving the 1970 Ford, an automobile being operated by Billy J. Long and in which his wife was riding as a guest passenger passed them on the highway. The two cars then pulled onto the shoulder of the road and Lee Irvin and Terry Long got out of their vehicle and walked toward Terry Long’s parents’ car. Mr. Long testified that at the point he passed Jiis other vehicle, the road was straight and level and visibility good. He also testified he could easily discern that his son was not, at that time, operating the vehicle. Lee testified that Mr. Long did not, when his son and he alighted from the car, admonish his son to retake the wheel of the car, nor did he tell them that no one other than the plaintiff could operate the vehicle. He also testified that following their conversation, Mr. Long admonished the boys to be careful, observed their return to the vehicle and witnessed the fact that Irvin once again got behind the wheel. The plaintiff further testified that, upon re-entering the traveled portion of the highway, Mr. Long once again passed their car. The Long vehicle, in fact, disappeared from view and was not in the vicinity of the accident scene at the time of the accident.
Following this brief interlude, the group continued their journey southward, traveling through Natchitoches with plaintiff still behind the wheel. South of Natchitoches, they were passed by another automobile carrying some of their fellow students, who advised them that the buses which they thought were behind them were in fact ahead of them. They then pulled off the road and debated as to what their course of action should now be, given this change in circumstances. The testimony reflects that Terry Long, Hennigan and Gibson all wanted to go faster in order to catch the buses, a course of action which plaintiff did not want to follow and which he let them know that he was in opposition to. Reluctantly, however, he relinquished the wheel to Gibson for the express purpose of driving faster in order to attempt to catch the buses. The plaintiff testified that when he relinquished the wheel to Gibson, he did so because of the fact that other than himself, this individual was the least alcoholically affected of any of the *869 occupants of the vehicle, and, at the time he turned the wheel over to him, Gibson did not, by his actions, mannerisms or speech, appear intoxicated. In fact, it was not until after he got behind the wheel of the Ford automobile that Gibson’s intoxication manifested itself, as he began almost immediately to drive recklessly, not only traveling at a faster rate of speed than had been anticipated, but also weaving in and out of traffic and passing other automobiles with reckless abandon. The plaintiff testified that as soon as the degree of Gibson’s intoxication became evident, he began to protest violently but to no avail. It was shortly after this point that the record shows that Gibson attempted to pass another southbound vehicle and pulled directly into the path of a northbound vehicle being driven by Kenneth Lusk. Both vehicles, in an attempt to avoid a collision, swerved toward the left-hand southbound shoulder of the highway where they collided headon, resulting in severe injuries to the plaintiff.
A blood alcohol test had been run on William Gibson some two hours following the time of the accident and revealed a blood alcohol content of .104 grams per cent. Expert testimony was adduced to the effect that the driver’s ability to safely operate a vehicle would have been substantially impaired with such blood alcohol content. The expert further testified that the drinking would have causal connection with the accident.
The trial judge in rendering judgment against plaintiff, reasoned:
“The demands of the plaintiff are rejected with these comments:
“I find as follows: That Lee knew or certainly should have known of William’s condition. He testified that William had been drinking the least as compared to him, referring to himself. Lee refused to drive any faster in order to catch up with the buses, after being told by the boys in the other car — Wilbur Smith being one of those boys. He testified that he knew that William would drive faster because he refused to. That was the reason that William was to drive the car from that point forward. That was the purpose. He used the exact words under cross-examination. And he knew what William had been drinking at that point. He testified under cross-examination that he did not hear William say he did not want to drive. Again, under cross-examination he reiterated that he was aware of what William was drinking and what he had been drinking, and was so aware when he turned the driving over to him. And the purpose of turning it over to him was in order that we would drive faster because Lee quite properly refused to drive any faster, and he voluntarily got back in the car in order to pursue the buses.”
Appellant assigns error to the judgment appealed by reason of its application of the doctrine of assumption of risk to the facts of this case. Appellee further argues, in the alternative, that no liability insurance was afforded under the policy issued by State Farm Mutual Automobile Insurance Company to Mrs. Savelle.
As pointed out in Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971), the defendant who bears the burden of proving contributory negligence must prove by a preponderance of the evidence that the driver’s intoxication was a substantial factor contributing to the driver’s accident. In the cited case Justice Tate states the correct rule of law to be:
“ * * * A passenger riding with a driver who has been drinking excessively only assumes the risk of drunk driving, that is, of accidents resulting from drunk driving. When an accident occurs involving a driver whose mental or physical faculties have been materially impaired due to the influence of intoxicants, a guest passenger who knows or should know of the driver’s condition and nevertheless voluntarily rides with him cannot *870 recover for injuries received in an accident caused in whole or in part by the driver’s negligence, if the alcohol-induced impairment of the driver’s ability is a substantial contributory cause of the driver’s negligence. Id. p. 107.
From a careful review of the record we find that the evidence clearly shows that William Gibson, the driver of the Long vehicle, was intoxicated and was mentally and physically impaired by drinking over a period of several hours preceding the accident. The facts of the instant case bring it within the rule prohibiting the recovery of guest passengers where the driver’s ability to control an automobile has been materially influenced by the consumption of intoxicants. Roller v. Cormier, 192 So.2d 568 (La.App., 3d Cir. 1966); McAllister v. Travelers Insurance Company, 121 So.2d 283 (La.App., 1st Cir. 1960); Mercier v. Fidelity & Casualty Company of New York, 10 So.2d 262 (La.App., Orl.1942) ; Bourg v. Aetna Casualty & Surety Company, 77 So.2d 131 (La.App., 1st Cir. 1954).
Counsel for Irvin, however, takes issue with the trial court’s holding that Irvin knew or should have known that Gibson was intoxicated when he relinquished the Long automobile to him, and contends that it was not until Gibson began driving and plaintiff had become a virtual prisoner in the recklessly driven automobile, did the extent of Gibson’s condition become apparent.
According to the testimony of Hennigan, all had been drinking since they left Shreveport and all knew that the others were drinking. Having voluntarily accompanied his three companions on a mission during which some if not everyone consumed an excessive quantity of beer, Irvin must be charged with knowledge that Gibson was unfit to drive the automobile when Gibson relieved him as driver. Certainly at that time Irvin had the opportunity of refusing to travel further as a guest passenger. The basis of the defense of assumption of risk is express or implied consent of the injured person to relieve the negligent party of his obligation of reasonable care towards him and such consent must be made with full knowledge and understanding of the consequences. Cf. Mitchell v. Hepinstall Steel Company, 264 So.2d 325 (La.App., 4th Cir. 1972, cert. denied).
The facts in this case are convincing that Irvin knew, or should have known, of Gibson’s unfitness to drive.
In view of our finding that appellants’ right of recovery is barred by reason of contributory negligence under the assumption of risk doctrine, we need not decide the other issues presented herein.
Affirmed.