330 So.2d 321 (1976)
Thomas Doylas SUTTON, Plaintiff-Appellant,
v.
Larry H. LANGLEY et al., Defendants-Appellees.
No. 12866.
Court of Appeal of Louisiana, Second Circuit.
March 15, 1976.
Rehearing Denied April 19, 1976.[*]
Writs Denied June 11, 1976.
*323 Booth, Lockard, Jack Pleasant & LeSage by J. E. Bolin, Jr., Shreveport, for plaintiff-appellant.
Mayer & Smith by Alex F. Smith, Jr., Shreveport, for defendants-appellants, John H. Thompson and Empire Ins. Co.
Cook, Clark, Egan, Yancey & King by Benjamin C. King, Shreveport, for defendants-appellants, James M. Goslin and Interstate Fire & Cas. Co.
Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, for defendant-appellee, Commercial Fire & Marine Co.
Lunn, Irion, Switzer, Johnson & Salley by Richard H. Switzer, Shreveport, for defendants-appellees, Continental Ins. Co. and James M. Goslin.
Before PRICE, MARVIN and SMITH, JJ.
En Banc. Rehearing Denied April 19, 1976.[*]
SMITH, Judge.
This is a tort action, wherein Brenda Sutton, a guest passenger in a Volkswagen automobile, sustained rather serious injuries when the car left the highway and overturned several times. She was awarded $41,100 and her father was awarded medical and related expenses totaling $1,481.85 by the trial court.
Defendants in the district court were the father of Mike Ivey, driver of the Volkswagen; Larry H. Langley, driver of a mail truck; Johnny Thompson, the owner of the mail truck; James M. Goslin, Sheriff of Caddo Parish, where the accident occurred, and several insurance companies which had written automobile public liability policies or uninsured motorist protection for the several persons alleged to have been involved in the accident. Judgment below was against the driver, owner and insurer of the mail truck. These parties appealed. Brenda Sutton and her father also appealed as to the denial of their claims against the remaining defendants.
Approximately two hours before the accident, the mail truck, a 1½ ton truck about eight feet in height, stalled on the highway because of ignition failure. The driver telephoned his employer over sixty miles away for a wrecker, which came the next morning. About an hour after the truck stalled, two Caddo Parish Sheriff's deputies arrived and began to warn and divert traffic away from the stalled truck.
The highway in this area, U.S. 71 between Texarkana and Shreveport, is a relatively flat and straight two-lane road with a maximum paved surface width of 24 feet. The shoulders of the highway are not paved but are loosely graveled, being six to ten feet in width. The posted speed limit was then 60 mph. The truck stalled in the northbound lane. Some distance south of the stalled truck was a slight curve, the visibility through which was unimpaired, and the centerline had no accompanying yellow line indicating no passing. Except for head lights, the lights on the stalled truck, including top clearance lights, were illuminated but became very dim because of the ignition failure.
The deputies ignited flares or fuzees. One was placed in front of the truck in the *324 northbound lane and three were placed to the rear of the truck. One flare was on the tailgate of the truck, a second in a beer can near the center of the northbound lane approximately 40 feet south, and a third placed on the right-hand edge of the paved surface of the northbound lane about 20 feet south of the second flare. One deputy, experienced with flares or fuzees, stated they could be seen from a quarter of a mile away on a dark and clear night.
The sheriff's car was parked on the southbound shoulder a few feet away from the paved surface and a few feet south, but almost parallel with the stalled truck. The hazard lights of the sheriff's car were engaged and blinking. The roadway was dry, although earlier rains had dampened the countryside which was essentially rural farmland and fields in the area of the accident scene. The night was dry, clear and dark, without moonlight.
At the time of the accident one deputy was in the sheriff's car on the radio attempting to track down the wrecker supposedly sent by the truck owner. The deputy in the car saw the accident through his rear view mirror. The other deputy, who had stationed himself near the flare on the roadway behind the truck, was waving and attempting to signal and warn the approaching Volkswagen with a flashlight to which was affixed a red wand plastic cover 8-10 inches in length. His efforts with the flashlight proved futile and he hastily moved out of the way to avoid being struck by the Volkswagen, which ran over the two most southerly flares before leaving the roadway and overturning.
The Volkswagen was occupied by its 19 year old driver and his date on the front seat and by Miss Sutton and her date on the rear seat. The other occupants were all around 18 years old. They had left Texarkana about 7:30 P.M. and had journeyed approximately 70 miles to dance to live music at a Bossier City establishment. Each one had drunk one beer on the way to Bossier City.
While enjoying the music and dancing for about 1½ hours they consumed several mixed drinks. Miss Sutton had two such drinks. Mike Ivey testified he had a minimum of two drinks, a maximum of four, and his best recollection was that he had only three drinks while dancing. His blood alcohol, taken approximately one hour following the accident, was .12 grams percent alcohol. He gave no indication of driving under the influence of alcohol, even to other sheriff's deputies who followed the Volkswagen for a short distance a few miles north of Shreveport and who came upon the scene shortly after the accident. These deputies were several hundred yards behind the Volkswagen when the accident occurred, but noticed the blinking lights of the parked sheriff's car, one or more of the burning flares and the taillights of the Volkswagen when it went off the highway and overturned.
The only thing amiss in Mike Ivey's driving up until this time was his missing the turn onto Highway 71 in Shreveport and having to stop and ask directions, a not uncommon occurrence for a sober and attentive driver in a strange city in the daylight. The Volkswagen was proceeding northerly at approximately 60 miles per hour. There was no interference by the lights of southbound traffic and no other immediate northbound traffic was ahead of or following the Volkswagen. All occupants were awake and conversing before the accident.
Mike Ivey testified he saw only what he described as a white light surrounded by a red light. To him this looked much like a motorcycle taillight with which he was familiar. Both he and Miss Sutton testified he asked what it was or whether it was a motorcycle in the road ahead, to which she replied to the effect that it looked like a motorcycle. Mike Ivey stated he never saw the truck, the sheriff's deputy with the *325 flashlight, the flares or the sheriff's car on the opposite shoulder. He said that he did not know the stalled truck was in any way involved in the accident until long after it occurred. He said he thought he had a "choice" of "wiping out" someone on a motorcycle or attempting to go around the motorcycle on the right. Miss Sutton said she saw only what she thought was a motorcycle and she did not see "anybody holding anything". When Mike Ivey attempted to go to his right, he lost control and the Volkswagen left the highway, overturning several times and injuring its occupants.
Allegations of negligence were made against the driver and owner of the truck, against Mike Ivey and against the sheriff's deputies. The trial court found the "proximate cause" of the accident to have been the negligence of the driver and owner of the mail truck and denied judgment against the other defendants. The trial court also rejected the defense of contributory negligence and assumption of risk pleaded by the several defendants as against Miss Sutton. We affirm in part, reverse in part and recast the judgment.
In considering the defense of Langley, driver of the mail truck, his employer and insurers, this court finds that the truck was a defective vehicle, known to the employer to be defective. It was sent on the highway in an unsafe condition, without flares, flags, flashlights or warning devices. Because of the company decision to send the truck out in this defective condition and the truck's subsequent failure, it remained an obstruction in the highway for hours.
The Louisiana statutes impose obligations on persons who park vehicles on the main traveled portion of any highway[1] and are "designed to protect life and property on the highways. It is a safety measure. . ." See Dixie Drive it Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298, 302 (1962); Williams v. Travelers Indemnity Company, 210 So.2d 58 (La.App. 1st Cir. 1968); Motors Insurance Corporation v. Thomas, 315 So.2d 411 (La.App. 3d Cir. 1975).
We recognize that violation of the statute does not, per se, render the offending party guilty of negligence constituting a legal cause of the accident. Kinchen v. Hansbrough, 231 So.2d 700 (La.App. 1st Cir. 1970), writ denied, 255 La. 1099, 234 So.2d 194. For the violation to be actionable negligence, it must have been the legal cause of the accident. Dixie Drive it Yourself System v. American Beverage Company, supra; Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972); Johnson v. St. Paul Mercury Insurance Company, 219 So.2d 524 (La.App. 3d Cir. 1969); Blanchard v. Wicks, 314 So.2d 366 (La.App. 4th Cir. 1975).
As stated by this court in Larkin v. United States Fidelity & Guaranty Company, 258 So.2d 132 (La.App. 2d Cir. 1972), if negligence is "to give rise to an action ex delicto under LSA-C.C. art 2315, it must be the proximate cause of the injury for which damages are sought." There we said:
"Therefore, to constitute proximate cause as distinguished from remote cause, the negligent act must be the primary or moving cause of the injury, or that cause which in natural or continuous sequence, unbroken by any efficient or intervening cause, produces injury and without which the accident could not have happened, provided the injury is of such nature as to have been reasonably anticipated or foreseeable as the natural and probable consequence of the wrongful act." Id, p. 136
See also Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970), Rowe v. Travelers Insurance Company, 253 La. 659, 219 So.2d 486 (1969); Laird v. Travelers, supra.
*326 In the instant case, since this identical difficulty had arisen before and no attempt had been made to remedy it, the truck driver and his employer should reasonably have anticipated that the truck would stall on the highway and thereby create a hazard to the traveling public. They should have recognized that the battery alone would not sustain the lighting system and should not have allowed the truck to depart the terminal in this condition. Reasonable precautions were not taken by the owner of the truck to prepare it properly for use on the highway. The driver of the truck did not employ adequate measures in parking the stalled vehicle or in warning approaching motorists of the mail truck after it had stalled in the lane of traffic. See Motors Insurance Corporation v. Thomas, supra. Particularly as to a guest passenger in another vehicle, these breaches of duty by the truck's owner and driver were legal causes of the accident and are grounds for imposing liability.
The sheriff's deputies arrived at the scene of the stalled truck and acted responsibly to the circumstances. They reasonably anticipated the truck driver's arrangements for a wrecker to be promptly implemented. They placed temporary warning devices in the road and attempted to divert traffic, which the truck driver failed to do. The lower court correctly found no actionable negligence on the part of the sheriff's deputies constituting a legal cause of the accident.
The culpability of the owner and driver of the truck does not automatically exonerate the Volkswagen driver, Mike Ivey, or the uninsured motorist coverage carrier of liability herein. It was the combination of the negligence of the owner and driver of the truck and the negligence of the Volkswagen driver that produced the injury of which plaintiff complains. See Briley v. North River Insurance Company, 161 So.2d 449 (La.App. 1st Cir. 1964).
Before concluding that Brenda Sutton has a right to recover from her uninsured motorist insurer, it is necessary to determine whether Louisiana law or Texas law applies because of the Texas guest passenger statute.[2] The applicable law is also relevant as to recovery from the insurer because in Louisiana "stacking" of such coverage is sanctioned while in Texas it is not. Defendant L. J. Ivey, who was sued for the damage allegedly caused by his minor son Mike, is a Texas resident. Plaintiffs are Texas residents.
In Johnson v. St. Paul Mercury, 256 La. 289, 236 So.2d 216 (1970), the Supreme Court held, over a well-reasoned dissent by Justice Sanders, that Arkansas law should be applied by Louisiana courts in a case involving two Louisiana residents and arising out of an accident in Arkansas. In effect the lex loci delicti rule in conflict of tort law cases was recognized in that case.
However, in the later case of Jagers v. Royal Indemnity Company, 276 So.2d 309 (1973), the Supreme Court, over the dissent of Justice Summers, abandoned the approach taken in Johnson, supra, and expressly overruled Johnson. There the court applied Louisiana law to a suit between two Louisiana domiciliaries arising out of a Mississippi accident. The Court did so by classifying that case as presenting a "false conflict", i. e., that situation that arises when it is found that only a single state has an interest in the application of its law, and the other state has no interest in the application of its law in the case. We view this later expression to direct that the "interest analysis" theory for resolving choice of law problems in Louisiana is now the proper approach.
Without resorting to lex loci delicti reasoning, we determine that Louisiana *327 tort law is properly applicable here. It cannot be said that this is a "false conflict" problem as was presented in Jagers, supra, because Texas does have an interest in protecting the awards of accident victims residing in that state. Louisiana governmental interest in governing awards of victims of accidents occurring on its highways and, more importantly, involving other Louisiana residents, must outweigh the Texas interests in our opinion. This is especially true when those out-of-state residents voluntarily choose Louisiana courts as the forum in which to assert their own interests. The policy of guest passenger statutes is to protect liability insurance companies against claims brought by guests in collusion with their host. As pointed out in Justice Sanders' dissent in Johnson, supra, such a policy is primarily concerned only with suits brought in the guest passenger states affecting torts, guests, and insurance companies subject to the jurisdiction of the guest passenger state. Under the facts of the instant case such a policy will not be advanced by the application of Texas law.
The Supreme Court in Jagers, concluded that when the foreign state has no interest in Louisiana litigation, the application of Louisiana law by Louisiana courts will contribute much greater predictability, certainty, and constancy to the law. We believe the same to be true where the interests of Louisiana outweigh the interests of the foreign state as in the case here and we hold Louisiana tort law to be applicable.
In light of the modern choice of law approach taken by the Supreme Court in Jagers, supra, our evaluation of the significant relationship that Louisiana has to the transaction in the absence of a choice of Texas law by the parties, we are of the opinion that Louisiana law also applies as to the interpretation of the uninsured motorist coverage.
As Jagers, supra, evinced willingness to abandon rigid application of the lex locidelicti rule of Johnson v. St. Paul Mercury Insurance Company, supra, it must also have signified the end of rigid application of the lex loci contractus rule of conflicts of laws. The intent of the Restatement of the Law 2d, Vol. 1, Chapter 8, to accomplish just such a result is seen in the Introductory Note:

"2. The Changes.
The original Contracts Chapter has been changed in four principal ways. First, the original Restatement did not acknowledge any power in the parties to choose the applicable law. The present: Chapter recognizes that the parties have such power subject to certain limitations (see § 187). Second, the present Chapter no longer says dogmatically that, in the absence of an effective law by the parties, the validity of a contract is governed by the local law of the place of contracting. Instead, the applicable law is now said to be the local law of the state which, with respect to the particular issue, has the most significant relationship to the transaction and the parties (see § 188). Third, the original Restatement made a sharp distinction between matters of validity and matters of performance, stating that matters pertaining to damages, to sufficiency of performance and to excuse for nonperformance are governed by the local law of the place of performance rather than by the local law of the place of contracting. This distinction has now been abandoned, and in the present Chapter all issues involving contracts are said to be governed either by the law chosen by the parties or, in the absence of an effective choice, by the local law of the state which, with respect to the particular issue, has the most significant relationship to the transaction and the parties. Lastly, the original Restatement laid down rules applicable to the entire field of contracts and, except with respect to the location of the place of contracting, made no attempt to distinguish *328 between particular kinds of contracts. Special rules for particular kinds of contracts are stated in Title B of this Chapter."In a pre-Jagers case, Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), the Louisiana Supreme Court, with Justice Summers writing for the Court, held that Florida law applied to a standard form insurance contract between the insurer and Florida residents involved in an accident in Louisiana. The Florida residents there were suing their own insurer under uninsured motorist coverage as plaintiffs have done here. The Court applied the lex loci contractus rule. There were no dissents in that case but three justices concurred in result and another simply concurred. Justice Tate assigned reasons for concurring and pointed out, as had Justice Summers, that the result in that case would have been the same no matter which state's law was applied. Justice Tate expressed reservation about holding that Florida law applied to the standard form policy without first examining the pertinent interests of the two states.
We interpret Jagers, supra, as authority for abandoning rigid application of the lex loci contractus rule. After examining the interests of Texas and Louisiana, we conclude that Louisiana interests must prevail in the instant case.
We recognize that Texas is not without any interests in the uninsured motorist coverage question. That interest lies in the possible effect the application of Louisiana law might have on insurance rates for such coverage written in Texas for Texas residents. However, it must be said that this interest is minimal when one is dealing with a standard form insurance contract written by an insurer who does business in several, if not all, the states. Also, it must be recognized that in our mobile society the insurer could not reasonably contemplate the insured driving only in Texas and being subject to Texas interpretations of the policy provisions at all times. When Texas' interest is compared to Louisiana's interest in the regulation of awards to victims on its highways, and in protecting persons on its highways from damage by uninsured motorists, and in equally assessing the burden of that award to all culpable parties, it must be concluded that the interests of Louisiana prevail. Louisiana standard-policy construction should apply in a Louisiana court in preference to the Texas construction of that policy. This conclusion is further buttressed by the recognition that Louisiana domiciliaries who are defendants in this case could be adversely affected by the Texas construction of the uninsured motorist provisions by limiting the fund from which plaintiffs claims are to be satisfied.
Having concluded that Louisiana law applies in this situation, we must examine the facts of this case with respect to the host driver's liability, the cancellation of the insurance policy by Commercial Standard Fire and Marine Insurance Co., and the extent of uninsured motorist protection afforded plaintiffs by Commercial Insurance Company of Newark, New Jersey.
Mike Ivey was either negligent in failing to maintain a proper lookout or was sufficiently intoxicated to dull his senses to the potential danger and erode his judgment. Tests indicate he had .12 grams percent blood alcohol content. There was testimony that an average person of the same size and weight would experience slower comprehension and coordination as a result of that amount of alcohol. Mike Ivey was not expected to anticipate that an improperly lighted vehicle was stopped in his path. It is elementary that the requirement of flares and their presence on a public highway is for the safety of the traveling public. Flares indicate that there is potential danger. Mike Ivey should have noticed and heeded the flares. By his own admission he thought the flashlight he saw was a motorcycle.
This case falls into the group of cases in which a driver is held to be negligent in *329 not seeing what a reasonably careful and prudent driver could and would have seen and avoided. Piggly Wiggly Op. Wrhse. v. Commercial Union Ins. Co., 174 So.2d 207 (La.App. 2d Cir. 1965).
As pointed out in Dixie Drive It Yourself System v. American Beverage Company, supra, 137 So.2d at p. 302, "it is clear that more than one legally responsible cause can, and frequently does, contribute to a vehicular collision." In Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970) there were two causes in fact of the accident and both were held legally responsible for damages in solido.Briley v. North River Insurance Company, 161 So.2d 449 (La.App. 1st Cir. 1964).
The defense contends that plaintiff, Brenda Sutton, should be denied recovery because of contributory negligence or assumption of the risk in riding with an intoxicated driver.
There was no evidence that any of the occupants of the Volkswagen had sufficient alcohol to be intoxicated other than Mike Ivey. There is no evidence in the record to establish that Brenda Sutton knew or should have known Mike Ivey was intoxicated. Other persons who were associated with him on the evening of the accident indicated his behavior was normal. Two sheriff's deputies observed his driving and found no cause to stop him. Thus this case is distinguishable from Berry v. Travelers Insurance Company, 273 So.2d 923 (La.App. 2d Cir. 1973) and from Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971). It was not shown here that Brenda Sutton knew or had any reason to believe that Mike Ivey was intoxicated. Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133 (1965). Because of that fact, this case is also distinguishable from Irvin v. Savelle, 325 So.2d 866 (La.App. 2d Cir. 1976).
This court does not find Brenda Smith negligent in failing to observe the truck ahead of the Volkswagen. A guest passenger is not required to monitor the operation of the vehicle in which she is traveling. Smith v. Marquette Casualty Company, supra. This is especially true when she is riding in the back seat. Bodan v. American Employers Insurance Company, 160 So.2d 410 (La.App. 2d Cir. 1964). Nor can it be said that Brenda Sutton's failure to identify properly the obstruction in the road constituted contributory negligence on her part. Brenda Sutton did not know that Mike Ivey was unaware of the peril. The evidence reveals that he, in fact, mentioned seeing something in the road ahead immediately before the accident and that plaintiff also acknowledged its presence. Plaintiff, however, cannot be charged with contributory negligence because the driver of the vehicle failed to take proper action to avoid the peril. Plaintiff, herself, had no actual control of the vehicle. Further, the evidence reveals that plaintiff's knowledge of the peril came too late to avoid the hazard or to warn effectively the driver of the vehicle. See Blashfield Automobile Law and Practice, 3rd ed., Vol. 5, § 215.15, pp. 341, 342, and Louisiana cases cited therein.
The defendants failed to prove that Brenda Sutton was contributorily negligent or that she had assumed the risk.
In this case the evidence establishes that there was fault on the part of the uninsured motorist Mike Ivey. It also establishes that the car he was driving at the time of the accident was an uninsured automobile as defined in the two policies allegedly in force at the time of the accident. Commercial Standard Fire & Marine Insurance Company, one of those insurers, contends that the policy issued by them had been cancelled before the accident. We must determine whether that cancellation had been perfected at the time of the accident.
We hold that Commercial Standard Fire & Marine Insurance Company had effectively cancelled their insurance coverage of plaintiff before the accident. The evidence *330 preponderates in favor of this insurer's contention that the notice was indeed mailed and was in fact received by Mr. Sutton.
It is necessary for the insured to rebut the presumption of delivery in order to make the cancellation ineffectual. Cuccia v. Allstate Insurance Co., 262 La. 545, 263 So.2d 884 (1972). The insured did not sustain that burden in the instant case. The affidavit of the agent for the insurer establishes that the notice was mailed properly stamped, on August 6, 1970 to the address shown on the policy, which was plaintiff's correct address. The notice of cancellation itself was filed into evidence and clearly shows the Fort Worth, Texas, stamp, the date August 6, 1970, as well as Sutton's correct address. The only affirmative proof of nondelivery was the self-serving testimony of Mr. Sutton. The circumstances, most importantly the application (by Sutton's insurance agent), for coverage with another insurer around the effective date of the cancellation, admittedly with the authorization of Sutton himself, and his admission that he did not intend to have two insurers, indicate actual receipt of the notice of cancellation. We find, therefore, that Sutton failed in his burden of proof of nondelivery sufficient to rebut the presumption of "notice" in the Louisiana sense.
As noted above, application was made by Sutton for insurance protection with another insurer, Commercial Insurance Company of Newark, N. J. Pursuant to this application, coverage was afforded by that company from August 18, 1970 to October 3, 1970. It was in effect at the time of the accident in which plaintiff was injured. That policy provided uninsured motorist coverage to plaintiff. There are three vehicles listed in the policy as being covered. Three separate premiums were paid for the $10,000/$20,000 coverage for each of the three vehicles. Under Louisiana law, the three $10,000 coverages should be "stacked", to give a maximum of $30,000 coverage total. Wilkinson v. Fireman's Fund Insurance Company, 298 So.2d 915 (La.App. 3d Cir. 1974); Bourgeois v. Government Employees Insurance Co., 316 So.2d 804 (La.App. 1st Cir. 1975).
Brenda Sutton suffered compression fractures of two thoracic vertebrae. This injury required hospitalization for about two weeks as well as necessitating her wearing a back brace for an extended period of time. The condition was painful and led to other relatively minor, but nevertheless painful, complications. She had lacerations on her ankle. A nerve was severed in her left foot causing numbness in that region. She also had lacerations on her knee. She had to wear a knee brace for approximately two months because of weakness of that knee.
As a result of her injuries, her activities in her senior year of high school were severely limited. She had to restrict her extracurricular recreational activities and abandon her piano studies. She entered college in pursuit of a degree in music but was unable to continue that study because of pain and discomfort resulting from her injuries.
None of the appellants complain that the amounts awarded by the trial court were an abuse of his broad discretion in evaluating damages. We feel the trial court award is supported by the evidence and is within the broad discretion allowed trial courts in this area.
For the foregoing reasons, the judgment of the lower court is affirmed in part, reversed in part and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in solido and against John H. Thompson, Larry H. Langley, and Empire Insurance Company, and against L. J. Ivey:
(A) In favor of Brenda Gail Sutton for $41,100; and
(B) In favor of T. D. Sutton for $1,481.85, *331 with legal interest of seven percent per annum from August 20, 1971, and for all costs, including appellate costs, and expert witness fees, which are hereby fixed at $100 each for Drs. Smith and Barnes.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the uninsured motorist protection provisions of that policy of automobile public liability insurance between Commercial Insurance Company of Newark, New Jersey, and Tommy Sutton are held and declared to afford coverage to Brenda Gail Sutton up to the maximum amount of $30,000, provided that in no event shall Brenda Gail Sutton be entitled to recover from any or all parties defendant or insurers more than $41,100, with interest as above provided, and judgment is rendered accordingly.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of all other defendants, namely Sheriff James M. Goslin, Continental Insurance Company and Interstate Fire and Marine Company, rejecting plaintiff's demands.
AFFIRMED in part, REVERSED in part and recast.
NOTES
[*] Bolin, J. recused. Hall, J., dissented from denial to grant rehearing.
[1] LSA-R.S. 32:141; 32:367-8.
[2] The Texas Guest Passenger law requires what is tantamount to gross negligence to permit recovery by a guest passenger, i. e., intentional fault or heedless or reckless disregard of others. Proof of simple negligence is not sufficient to permit the guest passenger to recover. Ann.Civ.St. of Texas, Art. 6701b, § 1.