**Juba C. BELL**

v.

**STATE FARM FIRE & CASUALTY COMPANY.**

Civ. A. No. 81–0302.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Dec. 8, 1981.

Robert B. Neblett, Jr., Alexandria, La., for plaintiff.

DeWitt T. Methvin, Jr., Alexandria, La., for defendant.

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT

EDWIN F. HUNTER, Jr., Senior District Judge.

On February 8, 1980, complainant's son, Robin Bell, was a passenger in a 1979 Chevrolet automobile owned and operated by Raymond E. Giroux when it was struck from the rear by a 1978 Cadillac automobile driven by Lizene Byoune, Jr. Robin Bell received serious bodily injury which resulted in his death.

All parties agree that the accident was caused by the negligence of Byoune. The damage sustained—the wrongful death of Robin Bell—far exceeds the $35,000 insurance coverage available under the tortfeasor's policy. Plaintiffs seek to recover under the uninsured motorist provisions of the liability policy issued to Raymond Giroux.

Defendant, seeking dismissal, contends that Florida law should govern the Florida insurance contract and correctly avers that the uninsured motorist coverage does not, in Florida, provide coverage where as here the tortfeasor's coverage was in excess of the uninsured motorist's limits of $10,000. Plaintiffs maintain that Louisiana law should apply, and thus, the uninsured motorist coverage should be construed to include underinsured motorist coverage. LSA–R.S. 22:1406(D)(2)(b). Accordingly, plaintiff asserts that the "interest analysis" approach should govern.

In this diversity case we are required to follow the Louisiana approach to conflicts of law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Supreme Court of Louisiana, in *Jagers v. Royal Indemnity Co.,* 276 So.2d 309 (La.1975), abandoned the doctrine of *lex loci delicti,* the place of the injury rule, as the governing principle of conflicts resolution in tort litigation. The Court adopted the interest analysis approach. Louisiana courts and federal courts sitting here, which have addressed this issue, have utilized the same approach. *Wickham v. Prudential Insurance Co.,* 366 So.2d 951 (La.App. 1st Cir. 1978); *Sutton v. Langley,* 330 So.2d 321 (La.App. 2nd Cir.), writs denied 332 So.2d 805, 332 So.2d 820, 333 So.2d 242 (La.1976); *Brinkley and West, Inc. v. Foremost Insurance Co.,* 449 F.2d 928 (5th Cir. 1974); *Ardoyno v. Kyzar,* 426 F.Supp. 78 (E.D.La.1976); *Southern Insurance Co. v. Consumer Insurance Agency,* 442 F.Supp. 30 (E.D.La.1977); *Highland Insurance Co. v. Employers' Surplus Lines,*

497 F.Supp. 169 (E.D.La.1980); *Brawner v. Kaufman*, 496 F.Supp. 961 (E.D.La.1980). Interest analysis is a two step process. We must first determine whether a true or false conflict exists. If a false conflict exists, the law of the state that has the exclusive interest is applied.[1]

■ Louisiana and Florida have significant contacts with this litigation. The decedent, Robin Bell, was a resident of Louisiana, stationed at England Air Force Base near Alexandria, Louisiana. The owner and driver of the car in which he was a passenger, Raymond Giroux, was also stationed at England Air Force Base. The accident occurred in Louisiana. Plaintiffs, the mother and father of Robin Bell, are citizens of California and Florida, respectively. Florida's contacts with the litigation arise in that Raymond Giroux, the insured, is a citizen of Florida and his insurance policy was written and delivered to him in that state.

At least since *Carroll v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), the United States Supreme Court has recognized that both the Due Process and the Full Faith and Credit Clauses are satisfied if the forum has such significant contacts with the litigation that it has a legitimate state interest in applying its own law. In order to insure that the choice of law is neither arbitrary nor fundamentally unfair, the Supreme Court has invalidated the choice of law of a state which has no significant contact or significant aggregation of contacts creating state interests, with the parties and the occurrence or transaction.

"In deciding constitutional choice-of-law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, this Court has traditionally examined the contacts of the State whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation."

1. See Judge Rubin's analysis of the problem. *Ardoyno v. Kyzar*, 426 F.Supp. 78 (1976).

2. For an excellent discussion of *Hague* and its effect on conflicts theory, see Professor Robert

*Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

In *Hague* the Court upheld the application of Minnesota law regarding "stacking" of insurance under Minnesota's choice-of-law rules.[2] There, plaintiff's husband died of injuries suffered when a motorcycle was struck by an automobile. The accident occurred in Wisconsin near the Minnesota border. The operators of both vehicles were Wisconsin residents, as was the decedent, who, however, had been employed in Minnesota, and had commuted daily to work from Wisconsin. After the accident, the decedent's widow moved to and became a resident of Minnesota, and brought an action in a Minnesota Court seeking a declaration that Minnesota law governed the interpretation of the uninsured motorist provisions of her late husband's insurance policy. Defendant insurance company maintained that coverage should be determined by Wisconsin law, since the policy was delivered in Wisconsin, the accident occurred there, and all persons involved were Wisconsin residents at the time of the accident. The trial court concluded that Minnesota's choice-of-law rules required the application of Minnesota law permitting "stacking" and granted summary judgment for plaintiff. The United States Supreme Court affirmed, holding that the application of Minnesota law by the Minnesota court was neither arbitrary nor fundamentally unfair, and therefore not violative of the Due Process Clause of the Fourteenth Amendment or the Full Faith and Credit Clause.

"It is not for this Court to say whether the choice-of-law analysis suggested by Professor LeFlar is to be preferred or whether we would make the same choice-of-law decision if sitting as the Minnesota Supreme Court. Our sole function is to determine whether the Minnesota Supreme Court's choice of its own substantive law in this case exceeded federal constitutional limitations. Implicit in

A. LeFlar's "Choice of Law: States' Rights" in a symposium in the Hofstra Law Review (soon to be published).

this inquiry is the recognition, long accepted by this Court, that a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction." *Allstate Ins. Co. v. Hague,* supra, at 307, 101 S.Ct. at 637.

There is a clear conflict between the laws of Florida and Louisiana on the interpretation of uninsured motorist coverage. Both states have an interest in having its law apply. There is, indeed, a true conflict and we must apply the principles of the Second Restatement to determine which of the competing interests should prevail. The "most significant relationship" test promulgated in the Restatement, Conflict of Laws (Second)[3] is slightly more precise than interest analysis, though the two operate almost identically, to call for a comparison of governmental interests.[4]

The first consideration—the "needs of the interstate system"—presents no problems. Interstate auto traffic will not be affected. Nor will either state's interest in regulating interstate business within its state be detrimentally affected. As a consequence of the modern practice of conducting widespread business activities throughout the entire United States, the Supreme Court has in a series of cases held that more states than one may seize hold of local activities which are part of multistate transactions and may regulate to protect the interests of its own people, even though other phases of the same transactions might justify regulatory legislation in other states. *Osborn v. Ozlin,* 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940); *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777 (1943); *Alaska Packers Assn. v. Commission,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

More significant, however, is the "relevant policies of the forum" consideration. Government has always had a special relation to insurance. *Osborn,* supra. Louisi-ana views contracts of liability insurance as more than a private contract between two parties and realizes that such contracts are issued for the protection of the public and the benefit of injured persons as well as for the protection of the insured. Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for recovery of damages. For example, under Louisiana's Direct Action Statute, La.R.S. 22:655, if the accident or injury occurs in Louisiana, the right of direct action exists even when the liability policy was not written or delivered in this state. *Esteve v. Allstate Insurance Company,* 351 So.2d 177 (1977). Louisiana has a similar interest in policies of insurance which are designed to assure the ultimate payment of such damages. In *Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), the Supreme Court held that Louisiana had a legitimate interest in safeguarding the rights of injured persons in the state which was not outweighed by the interest of Massachusetts, the state where the policy was issued and delivered, in the policy sued upon.

Of course, Florida also has an interest in the policy sued on in this case. The policy was issued and delivered to a Florida citizen then residing in Florida. Florida has concern for the interest of the insured in the scope and nature of the obligations which bind as well as protect him. The premiums payable by the insured under this policy vary directly with the losses paid by the insurer, and to that extent the insured has a stake in the uninsured motorist clause of the policy. But these interests do not outweigh the interest of Louisiana in protecting those injured on its highways.

---

3. Restatement, Conflict of Laws (Second) §§ 145, 188, 222, et al. (1971).

4. Most of the courts that employ interest analysis actually do so by comparing the purported interests of the contacted states.

The next consideration, the "protection of justified expectations," involves the fundamental fairness of applying Louisiana's laws to a contract perfected in Florida.

> "The application of an otherwise acceptable rule of law may result in unfairness to the litigants if, in engaging in the activity which is the subject of litigation, they could not reasonably have anticipated that their actions would later be judged by this rule of law. A choice-of-law decision that frustrates the justifiable expectations of the parties can be fundamentally unfair." *Hague*, supra, 449 U.S. at 327, 101 S.Ct. at 648.

Here, State Farm had no reasonable expectation that the policy would be subject solely to Florida law. At the time of contracting, the parties were aware that the insurance policy was effective throughout the United States, and that the law of any state, including Louisiana, might be applicable to particular claims. The risk insured by the defendant was not geographically limited to Florida, and indeed, State Farm specifically anticipated that Mr. Giroux might suffer an accident either in Florida or elsewhere in the United States. Then, too, State Farm was at all times present and doing business in Louisiana.

> "Particularly since the company was licensed to do business in [the forum], it must have known it might be sued there, and that [the forum] courts would feel bound by [forum] law." *Clay v. Sun Insurance Office Ltd.*, 363 U.S. 207, 221, 80 S.Ct. 1222, 1230, 4 L.Ed.2d 1170 (1960).

The fifth consideration, the "basic policies underlying the particular field of law," also favors application of Louisiana law. The purpose of uninsured motorist coverage in both Florida and Louisiana law is to assure that those injured or killed in accidents will be compensated. This consideration seems to call for a comparison of governmental interests, and the policy of Louisiana to provide "under-insured" as well as "uninsured" coverage seems to better carry out this purpose.

"Predictability of result" is a proper consideration. This is an insurance contract action, on a contract made in Florida between a Florida resident and an insurer doing business in many states. The insurance policy covered a Florida car for accidents that might happen anywhere, and specified the coverage on a particular type of accident. Obviously, if predictability as to the contract's coverage relates to the time when the contract was made, Florida's law will, as the only law having significant contacts with that transaction, be favored. But the importance of this predictability will have to be weighed against the importance of the other considerations.

The last consideration, "ease in determination and application of the law to be applied," is of little significance here. Both Louisiana's and Florida's rules on uninsured motorist coverage are simple and easy to apply.

Having weighed the various factors as set out in the interest analysis or significant relationship test of the Restatement, we conclude that Louisiana's interest dominates, and that the forum's law in regard to uninsured motorist coverage must prevail.[5]

The motion for summary judgment requested by plaintiff should be granted. It is.

---

**5.** In reaching this decision, we have considered *Sprow v. Hartford*, 594 F.2d 418 (5th Cir. 1979). The *Deane* case cited in *Sprow* applied the "lex loci contractus" rule, but that case was a pre-*Jagers* decision. (See *Brawner v. Kaufman*, 496 F.Supp. 961, 964 (E.D.La.1980). Rather, we adopt the rationale of the Court in *Lee v. Hunt*, 631 F.2d 1171 (5th Cir. 1980) where the Court stated:

"We can therefore reaffirm our analysis in *Brinkley and West, Inc.*, and conclude (1) that the current approach to the choice-of-law in Louisiana is that embodied in the Restatement, and (2) that under that approach the interest analysis of the second paragraph of the Restatement is to be applied in all cases, regardless of the literal reach of Article 10. *Id.* at 1176.