430 So.2d 202 (1983)
E. Homer ABEL, Jr.
v.
Mr. & Mrs. Glenn WHITE, the Heritage Insurance Company, D.H. Holmes Company, Ltd. and ABC Insurance Company.
No. CA 0013.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*203 George C. Stringer, Jr., Harahan, for plaintiff-appellant.
John G. Miller, Jr., Leon A. Aucoin, Mark D. Kuss, Bailey & Leininger, Metairie, for defendant-appellee.
Before REDMANN, C.J., and BARRY and BYRNES, JJ.
REDMANN, Chief Judge.
Plaintiff appeals from the dismissal of a department store and his own uninsured motorist insurer from his action for damages from being injured by an automobile on the sidewalk at the entrance to the store's parking garage.
We affirm as to the department store but reverse as to the uninsured motorist insurer.

The Department Store
Plaintiff's theory of the department store's liability is that it forced plaintiff to use a dangerous exit, without supervising and controlling "automobiles entering from a bright street into a dark, narrow driveway...."
The basic facts are that plaintiff worked for a furrier that had a contract with the department store for the storage, repair and delivery of furs. Plaintiff's family owned the furrier business. The furrier had previously used a freight elevator located at the back entrance to the store. Three or four months before the accident, the store directed the furrier to use instead an elevator located in its parking garage. The only ground-level access to and from the garage was also used by automobiles.
*204 Plaintiff testified that he used that new route twice or thrice weekly for over three months, and that he often was nearly hit by automobiles. He was therefore aware of the allegedly dangerous condition and the department store is thus not liable as a premises owner. Poche v. Maryland Cas. Co., 407 So.2d 1237 (La.App. 4 Cir.1982), writ denied 412 So.2d 1095.
Furthermore, as the trial judge pointed out, this is not a case like Chaney v. Brupbacher, 242 So.2d 627 (La.App. 4 Cir.1970), in which a subordinate employee is ordered into danger, not inevitable in his work, by a supervisor aware of that danger, when the employee has no alternative but to accept the unnecessary danger or be fired. Plaintiff knew that the department store could not fire him, and he had no reason to suppose that his father and brother would fire him from the family furrier business for refusing to follow an unnecessarily dangerous exit route from the department store. Thus, if the store were deemed negligent for ordering plaintiff to exit through the garage, plaintiff could be held contributorily negligent (as to the store) for complying with the store's order.
Perhaps most in point is another part of the trial judge's reasoning: "The fact is that neither plaintiff nor [department store] management had reason to anticipate that [the automobile driver] would negligently strike the fur rack knocking plaintiff down."
We conclude that the department store cannot be held liable.

The Uninsured Motorist Insurer
The issues as to the insurer are whether plaintiff's appeal was timely; whether plaintiff resided in Texas or had moved to Louisiana at the time of the pertinent renewal of the insurance policy; if plaintiff moved to Louisiana after the renewal policy was issued, whether Louisiana law thereupon superimposed underinsured motorist coverage upon the policy, and if it did not, whether the policy language nevertheless entitles plaintiff to recover on the basis that the tortfeasant automobile driver was "uninsured" within the policy definition; if so, whether quantum exceeds the $5,000 plaintiff has already recovered and whether "stacking" is applicable.
We reject the insurer's contention that, as to the insurer, plaintiff did not appeal within the 60 days allowed by La.C. C.P. 2087. This contention is based on plaintiff's original brief's having described his appeal as against the dismissal of the department store, and not having briefed the insurer's liability. Neither circumstance defeats the appeal as to the insurer.
First, to appeal, C.C.P. 2121 requires no more than the obtaining of an order of appeal. Only to answer an appeal does C.C.P. 2133 require "stating the relief demanded." Montelepre Memorial H. v. Kambur, 170 So.2d 214 (La.App. 4 Cir.1964), cited by the insurer, is not authority to the contrary because there the plaintiff, denied review of the dismissal of one defendant, did not appeal at all.
Second, while failure to brief a contention may be deemed an abandonment of that contention, plaintiff expressly negated abandonment here by seeking leave to file a supplemental brief as to the UM insurer prior to the case's being submitted for decision by this court.
We conclude that the timely appeal constituted an appeal from the entirety of the judgment, and that the question of the insurer's liability was not abandoned.
Plaintiff theorizes that, notwithstanding that his Texas insurance policy does not by its terms provide underinsured motorist insurance, Louisiana law obliges it to do so. The parties argue choice of law but we find no conflict of laws that would affect the result under the facts of this case. Louisiana law as applied to those facts does not afford underinsured motorist coverage to plaintiff.
Those facts are that plaintiff resided and worked in Texas when he there obtained the automobile insurance policy at issue. Although plaintiff testified that he moved to Louisiana from his native Texas on August *205 3, 1974, and that he went in person to his insurer's office (inside plaintiff's credit union office) a week or two earlier to advise the insurer (as well as the credit union) of his intended move, the trial judge reasoned that Louisiana law could not fairly be applied to impose underinsured motorist coverage upon "this Texas policy when the assured moved to Louisiana during its term," which began October 12, 1974. The trial judge evidently did not believe plaintiff's self-serving testimony, to support which plaintiff offered two documents. The first was his cancelled check on a Texas bank, dated October 14 and deposited October 22 and payable to the Texas credit union, upon which check plaintiff's printed Texas address was lined through and his Louisiana address was handwritten by his wife. The second document was a "periodic statement" from the Texas credit union, showing transactions through December 31, 1974, and showing that at least after December 31 the credit union was mailing its "periodic statements" direct to plaintiff's Louisiana address. We can only conclude that the trial judge deemed the handwritten address on the check as no less self-serving than plaintiff's testimony, because the time of its being written there was not independently established (as, e.g., by bank photocopy from the time of its processing); and that he may even have inferred that no "periodic statement" earlier than December 31 was introduced because they did not contain the Louisiana address. We further note that the insurer mailed the renewal premium notice in 1974 to plaintiff's Texas address (as it did in 1975 as well, although it thereafter reissued the notice in 1975 to plaintiff's Louisiana address).
We simply are not in a position to reverse the trial judge's credibility evaluation, Canter v. Koehring, 283 So.2d 716 (La.1973), and we therefore accept that plaintiff did not prove that he had moved to Louisiana prior to the insurer's renewal of his policy effective October 12, 1974. We thus accept the trial court's factual inference that plaintiff moved to Louisiana sometime after October 12, 1974. The result is that we treat the insurance policy as one issued in Texas for delivery in Texas to a Texas resident to insure his family automobiles registered in Texas and principally garaged in Texas.
The legal question on those facts becomes whether, upon a resident of another state's moving to Louisiana, Louisiana law purports to affect the insurance policy issued and delivered to him in the other state to insure a vehicle registered and principally garaged in that other state, to make it provide the uninsured and underinsured motorist coverages that Louisiana law requires of Louisiana insurance (unless the insured waives it). That question is answered by the Louisiana statute itself.
La.R.S. 22:1406 D(1) (as amended by Acts 1974 No. 154) was the pertinent Louisiana law. It provided that no automobile policy "shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state ..." unless the policy provides uninsured and underinsured motorist coverage "in not less than the limits of bodily injury liability provided ..." (unless the insured waives that coverage in writing). The Louisiana statute therefore does not purport to affect plaintiff's policy, delivered in Texas to insure automobiles registered and garaged in Texas.
Brawner v. Kaufman, 496 F.Supp. 961 (E.D.La.1980), and Bell v. State Farm F. & C. Co., 527 F.Supp. 300 (W.D.La.1981), aff'd 680 F.2d 435 (5 Cir.1982), each ruled that Louisiana law could fairly be applied to the "interpretation" of an out-of-state contract of insurance and therefore ruled that "uninsured" motorist in an out-of-state policy included "underinsured" motorist coverage. We do not dispute the choice of law views of Bell and Brawner; La.C.C. 10, 2d para., provides that Louisiana law determines the effect of contracts executed elsewhere intended to have effect in Louisiana, and the policy expressly intended coverage in all of the United States. But Bell and Brawner err in viewing the question here at issue as a matter of "interpretation" of the policy. In fact, the Louisiana "interpretation" of *206 "uninsured" coverage is that it does not include "underinsured"; Lorio v. Safeco Ins. Co., 316 So.2d 744 (La.App. 1 Cir.1975), writ denied 318 So.2d 52, 54, 55; Smith v. State Farm M.A. Ins. Co., 328 So.2d 679 (La.App. 3 Cir.1976); Robertson v. Travis, 393 So.2d 304 (La.App. 1 Cir.1980), writ denied 397 So.2d 805, 806. It was not the courts' "interpretation" that introduced underinsured motorist insurance in Louisiana: it was the legislature's enactment of La. Acts 1972 No. 137 and Acts 1974 No. 154 amending R.S. 22:1406 D. That statute, as we have pointed out, expressly applies to policies delivered in Louisiana to insure vehicles registered or garaged in Louisiana. The statute does not purport to apply to policies delivered elsewhere to insure vehicles registered and garaged elsewhere. The correct result in Louisiana is therefore that of Powell v. Warner, 398 So.2d 22 (La.App. 4 Cir.1981): "uninsured" motorist coverage in an insurance policy that was not governed by Louisiana law when issued does not become "underinsured" motorist coverage because the insured is present in Louisiana when an accident occurs.
It may be more evident that a valid out-of-state contract that does not provide uninsured motorist coverage cannot in Louisiana be "interpreted" to include that coverage and is not by La.R.S. 22:1406 D obliged to provide that coverage merely because the insured visits or moves to Louisiana. The principle is the same with underinsured motorist coverage; an out-of-state policy that does not provide that coverage is not by La.R.S. 22:1406 D amended to provide that coverage upon the insured's visiting Louisiana and cannot, under the Louisiana jurisprudence, be "interpreted" to provide it (through "uninsured" motorist coverage).
Whether or not the choice of law rule derivable from C.C. 10, 2d para., would allow Louisiana law to impose uninsured and underinsured motorist coverage upon out-of-state insurance policies, Louisiana law does not do so.
Plaintiff's insurer is therefore not liable, on its uninsured motorist coverage, as if it included underinsured motorist coverage for the excess (within policy limits) of plaintiff's damages over the tortfeasor's liability insurance limits.
Plaintiff's insurer is liable, nevertheless, for the uninsured motorist coverage that it does expressly provide. The policy defines an uninsured vehicle as one that does not have bodily injury insurance "in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged." When this policy was renewed, Texas was the state where the insured car was principally garaged and the quoted language therefore treats as "uninsured" any automobile with liability insurance less than the minimum specified by the Texas financial responsibility law. That Texas law, Vernon's Ann.Tex.St. art. 6701h, required $10,000 per person; Kemp v. Fidelity & Cas. Co. of N.Y., 512 S.W.2d 688 (Tex.1974). The tortfeasor in our case had only $5,000 per person liability insurance, and was therefore "uninsured" within the definition and intent of the policy before us.
Plaintiff's injuries were not severe, considered by themselves. The insurer's argument that they do not merit more than the $5,000 already collected from the tortfeasor's insurer might not be unreasonable, if those injuries had befallen a person of otherwise sound limbs. Unfortunately, plaintiff had previously suffered injuries resulting in chondromalacia and a "drop foot" requiring a brace. The present incident, one may fairly conclude from medical and lay testimony, aggravated plaintiff's problems with his legs, and therefore his injuries damaged him more than they would have damaged an able-bodied person. We are satisfied that an appropriate general damage award would exceed $10,000.
Under the terms of the policy the insurer can only be liable for $5,000 because, unless "stacking" is applicable, the limit of UM coverage is $10,000, and that limit is expressly reduced by the $5,000 recovered from the tortfeasor's insurer.
We do not stack plaintiff's two automobiles' uninsured motorist coverages, basically *207 for the same reason we did not find underinsured motorist coverage. Stacking is not the result of Louisiana interpretation of insurance policy clauses, but of interpretation of the Louisiana statute to invalidate limiting clauses in policies issued in Louisiana.
It was only because of the Louisiana statute that the Louisiana supreme court, in Graham v. American Casualty Co., 261 La. 85, 259 So.2d 22 (La.1972), invalidated "other insurance" clauses that would have prorated the statutorily required UM minimum among three separate policies (each insuring the same person in respect to a different vehicle), and that thus would have allowed each policy to provide only a third of the statutory minimum. The court reasoned that the statute required "that each policy issued [in Louisiana] provide not less than the minimum $5,000 coverage," id., 259 So.2d at 25, and that pro rata clauses can not be given the effect of defeating that statutory requirement. Therefore the UM minimum in each policy was recoverable, resulting in a cumulation or stacking of their coverages. (The same reasoning invalidated anti-stacking clauses when two or more vehicles were insured in the same policy with separate UM premiums for each vehicle; Wilkinson v. Firemen's Fund Ins. Co., 298 So.2d 915 (La.App. 3 Cir.1974), writ denied [to insurers] 302 So.2d 306, 308 writ granted [to plaintiff] 302 So.2d 304, dismissed 309 So.2d 657 (La.1974).) But the Louisiana statute that was thus interpreted to defeat anti-stacking clauses, by its own terms, never did apply to our policy issued in Texas. Our policy could (insofar as Louisiana law is concerned) restrict or limit UM coverage, or provide it in lower limits than Louisiana requires, or not provide it at all. Its clause limiting UM recovery to the specified amount is not invalidated by Louisiana's statute. It is effective to limit plaintiff's recovery to single UM coverage limits.
Sutton v. Langley, 330 So.2d 321 (La.App. 2 Cir.1976), writ denied 332 So.2d 805, 820 and 333 So.2d 242, is contrary to our conclusion on stacking. Sutton involved many issues, and concerned itself to a great extent with deciding the choice of law (as to which we have no basic dispute). The Sutton opinion viewed the Louisiana stacking rule as "Louisiana standard-policy construction," id. at 328, rather than as statutory construction, i.e., construction of La.R.S. 22:1406 D. We disagree with Sutton just as we disagreed with Bell and Brawner: the question of stacking UM coverage is not a matter of construction of the out-of-state insurance contract but of construction of the Louisiana statute. (Indeed, stacking is now prohibited by the same Louisiana statute, since its amendment by Acts 1977 No. 623). We have quoted the statute's words and have pointed out that those words prevent its application to our policy. We therefore decline to follow Sutton on the stacking question.
The judgment appealed from is therefore reversed as to plaintiff's own insurer, and there is judgment in favor of plaintiff against Members Mutual Insurance Company for $5,000 with legal interest from judicial demand and costs. The judgment is affirmed as to defendant D.H. Holmes Co. Ltd.