448 So.2d 1379 (1984)
Preston WILSON, Plaintiff-Appellant,
v.
STATE FARM INSURANCE CO., et al., Defendant-Appellee.
No. 16148-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
Tyler & Johnson by Tommy J. Johnson, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendant-appellee.
Before JASPER E. JONES and NORRIS, JJ., and ENOS McCLENDON, J. Pro Tem.
JASPER E. JONES, Judge.
The plaintiff, Preston Wilson, appeals a summary judgment which dismissed his suit against Trinity Universal Insurance *1380 Company of Kansas, Inc., the uninsured and underinsured insurance carrier of Lewis Thorndike.
The plaintiff was injured in an automobile accident on the parking lot of Louisiana Downs Racetrack in Bossier City on November 23, 1979. The plaintiff was a passenger in a vehicle driven by Lewis Thorndike which was struck in the rear by a vehicle driven by Polly Gilbert. The plaintiff sued in the Bossier Parish district court to recover his personal injury damages. Included among the defendants were Polly Gilbert, her liability insurer, State Farm Mutual Automobile Insurance Company and Trinity, Thorndike's uninsured and underinsured motorist carrier. After suit was filed State Farm paid plaintiff $10,000.00 for a full release of Gilbert and State Farm. The suit against both of these defendants was dismissed with prejudice.
Lewis Thorndike, who was also made a defendant in the suit, was a resident of 2605 N. Glass St., Tyler, Texas, and the vehicle owned by him and occupied by plaintiff at the time of the accident was registered in Texas.
Trinity's policy, which is in the record, reflects it was produced by the Preston Insurance Agency of Henderson, Texas and sent to Thorndike at 2605 N. Glass St., Tyler, Texas.
The Trinity policy which provided $10,000.00 uninsured-underinsured coverage on the Thorndike vehicle contained the following provision:
"C. Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an occurrence by a person who is an insured shall be reduced by
(1) all sums paid on account of such bodily injury ... by or on behalf of
(i) the owner or operator of the uninsured motor vehicle and ...
(2) the amount recovered or recoverable from the insurer of an underinsured motor vehicle."
Trinity filed a motion for summary judgment attaching to it a copy of plaintiff's release granted to Gilbert and State Farm in consideration of the payment to plaintiff of the sum of $10,000.00.
Trinity asserted it had no liability to plaintiff under its uninsured or underinsured coverage which was initially $10,000.00 and which by the above quoted terms of the policy was reduced to zero when plaintiff was paid $10,000.00 by State Farm.
The trial court granted Trinity's motion for summary judgment and in its written reasons for judgment made the following findings:
"The Court finds that Louis (sic) Thorndike, the owner of the vehicle in question, was a resident of Tyler, Texas; and that, therefore, the automobile is registered and garaged in the State of Texas.
To apply Louisiana law concerning underinsured motorists coverage in this case would undermine the laws of Texas governing insurance contracts. Since the Texas court has specifically approved dimunition (sic) clauses such as the one found in the policy at issuesee Janet Leight (sic) Montayne v. The American Insurance Company, 638 SW 2nd, 518 and Jacinto Infante, et al v. Texas Farmers Insurance Company, 640 SW 2nd, 321this court finds for mover."
On appeal plaintiff assigns as error the trial court's finding that "Texas law applied to the uninsured and underinsured motorist coverage of a policy of insurance issued in the State of Texas to a Texas resident involved in an accident in the State of Louisiana where a victim of the accident is also a resident and domiciliary of the State of Louisiana."
Plaintiff contends Louisiana law applies to the interpretation of Trinity's policy and under Louisiana law Trinity's motion for summary judgment should have been denied.
C.C.P. Article 966 provides that a motion for summary judgment should be granted if there is no genuine issue as to material *1381 fact and mover is entitled to judgment as a matter of law.
There is no genuine issue of material fact present in this case.
The mover was entitled to the summary judgment based upon the diminution clauses in Trinity's policy if Texas law is applicable. Janet Leigh Montayne v. The American Insurance Company, supra, and Jacinto Infante, et al v. Texas Farmers Insurance Company, supra.
Trinity is not entitled to the summary judgment as a matter of law if Louisiana law is applicable. The Louisiana uninsured motorist statute provides an uninsured motor vehicle shall include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by a person entitled to claim uninsured coverage. La.R.S. 22:1406 D(2)(b).[1] The diminution provision in the Trinity policy is unenforceable under Louisiana law because it eliminates the coverage mandated by the cited provision of the uninsured motorist statute. Hebert v. Green, 311 So.2d 223 (La.1975); Earl v. Commercial U. Ins. Co., 391 So.2d 934 (La.App. 2d Cir.1980).
A conflict exists between the law of Texas and the law of Louisiana in that a different result will here occur depending upon which law is applied to the undisputed facts.
The case of Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973) adopted the "interest analysis" theory as the proper approach for resolving choice of law problems. The court found Louisiana had all the interest applicable to litigation on a Mississippi auto accident in a Louisiana court between a plaintiff domiciled in Louisiana and a defendant domiciled in Louisiana. The court then applied Louisiana tort law to the accident, where the plaintiff was the mother of the defendant. The Jagers case overruled the earlier case of Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970) which had required the application of the law of Arkansas to litigation in Louisiana between Louisiana domiciliaries where the tort occurred in Arkansas. The court had adhered to the lex loci delicti doctrine. The Jagers court cited with approval Restatement, Second, Conflict of Laws, § 6 (1969)[2] and approved the modern conflict choice of law rule that all interest should be evaluated and balanced to determine which law to apply.
This court in the case of Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976) applied the interest analysis, citing Jagers, to find Louisiana law applicable to litigation in a Louisiana court on a Louisiana accident involving a Texas defendant, his uninsured motorist carrier, Louisiana defendants, their insurers, and Texas plaintiffs. The court construed Jagers to not only abandon the rigid application of the doctrine of lex loci delicti but also as authority to reject the rule of lex loci contractus when the interest of Louisiana outweighed *1382 the interest of the state where the contract was made. The court stated that where Louisiana interest outweighed the interest of the foreign state, Louisiana law is applicable. The court reasoned that while Texas had an interest in awards to Texas citizens that Louisiana's interest in awards made to victims of accidents occurring on its highways involving other Louisiana residents outweighed Texas interests. The court acknowledged that Texas had an interest in the uninsured motorist policy written in Texas because of the adverse effect that the application of foreign law could have upon rates charged for this coverage. The court reasoned that Texas insurers in this mobile society were well aware that liability under their policies would not always be determined based upon Texas law. The court considered the interest Louisiana had in regulating awards for injuries sustained upon its highways and in protecting these victims from the uninsured motorist. The court concluded Louisiana interest outweighed Texas interest and applied Louisiana law to stack uninsured motorist coverage contained in Texas policies, a result not sanctioned by Texas law.
The Jagers and Sutton cases have been cited with approval and the interest analysis applied to find Louisiana law applicable in the following cases involving uninsured motorist insurance coverage in policies written in other states. Brawner v. Kaufman, 496 F.Supp. 961 (E.D.La.1980); Bell v. State Farm Fire & Cas. Co., 527 F.Supp. 300 (W.D.La.1981); Bell v. State Farm Mut. Auto. Ins. Co., 680 F.2d 435 (5th Cir.1982); Jones v. American Fire-Indem. Ins. Co., 442 So.2d 772 (La.App. 2d Cir.1983). See also Wickham v. Prudential Ins. Co. of America, 366 So.2d 951 (La.App. 1st Cir.1978) and Champion v. Panel Era Mfg. Co., 410 So.2d 1230 (La. App. 3d Cir.1982) where the interest analysis was applied in cases involving non auto insurance policies to find the foreign insurance contracts governed by the law of Louisiana.
The Brawner, Bell and Jones cases each involved uninsured motorist insurance policies written and delivered in other states which were construed in light of the requirements of the Louisiana uninsured motorist statute, La.R.S. 22:1406. In each case coverage was found under this Louisiana statute that would not have existed in the state where the contract was made.
Trinity relies upon Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983) wherein the Fourth Circuit refused to apply the Jagers interest analysis to determine the choice of law to be applied to a Texas uninsured motorist contract. The Abel court construed C.C. Art. 10[3] to require Texas law to be applied to a Texas insurance contract by a Louisiana court to a Louisiana accident involving a Louisiana plaintiff and apparently a Louisiana underinsured motorist. The Abel court reduced the $10,000.00 underinsured coverage in the Texas policy to $5,000.00 because plaintiff recovered $5,000.00 from the tort-feasor's insurer. Though the opinion does not clearly reflect the basis for the reduction Abel apparently enforced a diminution clause in the Texas policy similar to the one found in the Trinity policy.
We decline to follow Abel because we consider Jagers and Sutton and their progeny to represent sound public policy designed to permit Louisiana courts to apply Louisiana law to situations requiring a choice of law where Louisiana interest is sufficient to mandate this result.
We here find that while Texas had an interest in the Texas insurance contract issued by Trinity, this interest is outweighed by the Louisiana interest in the award to be made to a Louisiana victim of a Louisiana accident caused at least in part by a Louisiana domiciled underinsured defendant.
*1383 We, therefore, find the clause in the Texas insurance contract that has the effect of reducing the underinsured motorist coverage provided by the Trinity policy to be unenforceable because it is contrary to La.R.S. 22:1406 D(2)(b).
We REVERSE AND SET ASIDE the summary judgment and REMAND the case for further proceedings in accordance with law. Trinity is assessed with cost of this appeal.
NOTES
[1] La.R.S. 22:1406 D(2)(b):

(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.
[2] Restatement, Second, Conflict of Laws, § 6 (1969):

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law,
"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
"(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
"(d) the protection of justified expectations,
"(e) the basic policies underlying the particular field of law,
"(f) certainty, predictability and uniformity of result, and
"(g) ease in the determination and application of the law to be applied."
[3] Art. 10. Choice of Law:

The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed and executed...