448 So.2d 1383 (1984)
Verna Lou SNIDER, as Tutrix for the Minor Children of Jerry Wayne Snider, Plaintiff-Appellee,
v.
KEMPER INSURANCE COMPANY, et al., Defendant-Appellant.
Donna Bates SNIDER, Plaintiff-Appellee,
v.
Gloria M. MURRAY, Kemper Insurance Companies and State Farm Insurance, Defendants-Appellants.
No. 16124-CA, 16125-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
Writ Granted May 11, 1984.
Nelson & Achee, Ltd. by Roland J. Achee, Shreveport, for Aetna Cas. & Sur.
*1384 Lunn, Irion, Switzer, Johnson & Salley by Julie Mobley Lafargue, Shreveport, for State Farm Ins.
Self & Burkett by Don M. Burkett and Edward Chevallier, Many, for Verna Lou Snider.
Herman L. Lawson, Mansfield, for Donna Bates Snider.
Before PRICE and MARVIN, JJ., and McCLENDON, J. Pro Tem.
MARVIN, Judge.
In consolidated actions arising out of the wrongful death of Jerry Wayne Snider in 1979, Snider's widow in one action, and his children by an earlier marriage in the other, were awarded judgment under the UM coverage provisions of two automobile liability policies, one written by State Farm for Snider, and the other written by Aetna for Snider's father-in-law.
State Farm appeals, contending that Louisiana law should not be applied to its policy which was written in Texas when Snider was a Texas resident. Aetna appeals, contending that Snider was not "occupying," within the meaning of its policy, his father-in-law's vehicle when the fatal accident occurred. In each case we affirm the judgment as to State Farm and reverse as to Aetna.
On July 28, 1979, Snider, with his wife as a passenger, drove off of Highway 84 near Mansfield to look at land they were considering buying. Snider's truck got stuck when he attempted to drive back onto the highway. The Sniders walked to the home of her father, Bates, which was nearby, to get help. Snider then rode with Bates and Bates' son in Bates' truck to get Snider's truck out of the mud. A chain almost 20 feet in length was attached to the rear of Bates' truck and to the front of Snider's truck. Bates drove his truck and Snider drove his own truck as it was pulled out of the mud. After Snider's truck was pulled from the mud, the trucks were parked on the shoulder of the highway. Bates removed the chain from his truck. Snider was removing the chain from his truck when his truck was struck from the rear and propelled into the Bates truck by a car driven by Murray. Snider was crushed between the trucks and suffered fatal injuries.
Plaintiffs settled their claims against Murray and her insurer and proceeded to trial in these cases.

WHAT LAW APPLIES TO STATE FARM POLICY?
The trial court applied Louisiana law and recovery was allowed plaintiffs under the UM provisions of the State Farm policy.
The State Farm policy was issued to decedent by a Texas agent while decedent resided in Texas. About two or three months before the accident, decedent married his second wife and moved with her to Louisiana where he found work. He was working and living in Louisiana when the accident occurred. Ms. Murray resided in Louisiana, as did all plaintiffs.
State Farm's policy provided $10,000 uninsured or underinsured motorists coverage and contained the following limiting provision:
"(c) Any amount payable under the terms of this insurance because of bodily injury or property damage sustained in an occurrence by a person who is an insured shall be reduced by
"(1) all sums paid on account of such bodily injury or property damage by or on behalf of
"(i) the owner or operator of the uninsured motor vehicle and ...
"(2) the amount recovered or recoverable from the insurer of an underinsured motor vehicle."
If Texas law is applied, the diminution clause would have been enforceable and the $10,000 underinsured motorists coverage would be reduced to zero since plaintiffs recovered $10,000 from Murray's insurer. If Louisiana law is applied, the dimunition clause would be unenforceable because it is contrary to the provisions of the Louisiana uninsured motorists statute. *1385 LRS 22:1406(D)(2)(b); Wilson v. State Farm Ins. Co., 448 So.2d 1379 (La.App.2d Cir.1984).
State Farm contends that CC Art. 10 mandates that Texas law should be applied. CC Art. 10 provides that "[t]he form and effect of ... private written instruments are governed by the laws and usages of the places where they are ... executed."
This court abandoned rigid application of the lex loci contractus rule of conflicts of law in the case of Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976), writ denied. In its place, the "interest analysis" theory of Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973), was applied. There Louisiana law was applied to a tort which occurred in Arkansas. Since Jagers, lex loci contractus is no longer a hard and fast conflicts of law rule in tort cases where insurance coverage is an issue. Wilson v. State Farm, supra.
Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983), recently refused to apply the interest analysis to an insurance policy issued in Texas where the accident occurred in Louisiana and involved Louisiana residents. We declined to follow Abel in Wilson v. State Farm, supra, because we found that the Jagers and Sutton cases represent a sound public policy that permits Louisiana to apply its laws where it has a sufficient interest and reason to do so.
We recognize that Texas may also have an interest in the Texas policy because Texas insurance rates could possibly be affected. We find, however, that Louisiana's interest outweighs that of Texas and that Louisiana law should apply. Wilson v. State Farm, supra. As State Farm notes in its well presented and supported argument, Shaw v. Ferguson, 437 So.2d 319 (La.App. 2d Cir.1983), applied CC Art. 10 to a contract that was not an automobile liability policy involved as an issue in a tort case.

AETNA COVERAGE
The trial court did not give reasons for allowing Snider's representatives to recover under the UM provisions of the Aetna policy on the Bates truck. Snider was not a resident of the Bates household and was not a named insured under the policy. Snider would be an insured under the UM provisions only while occupying the Bates truck.
This language, which is defined in the policy as meaning in or upon or entering into or alighting from the vehicle, has been construed in many cases in various jurisdictions and sometimes inconsistently. See annotations at 19 ALR 2d 513 and at 42 ALR 3d 501, and cases discussed in Smith v. Girley, 260 La. 223, 255 So.2d 748 (1971) and in Day v. Coca-Cola Bottling Co., Inc., 420 So.2d 518 (La.App. 2d Cir.1982).
Plaintiffs do not contend that Snider was fatally injured while in, or while entering into, or while alighting from the Bates truck. As we have stated, Snider got out of the Bates truck and drove his truck out of the mud while it was being pulled by the Bates truck. Snider got out of his own truck after the two trucks were parked on the shoulder of the road and began removing the chain attached to the front of his truck. The chain had been removed from the Bates truck before the accident occurred. It must be concluded that Snider was not injured while in, or while entering into, or while alighting from the Bates truck. See Day, supra.
Plaintiffs argue that Snider was upon the Bates truck because the impact physically propelled him there. While it is true that Snider was crushed between the two trucks and in that sense was propelled upon or into the Bates vehicle, we cannot accept that premise to find coverage. Our acceptance of plaintiffs' position would effectively declare that any person who was either struck by, or who himself struck, the insured vehicle was occupying that vehicle and was an insured under the policy. Such a result, in our opinion, would be contrary to the intent of the policy.
There are cases which have found a claimant upon a vehicle that has become *1386 inoperable or that was being used in the aid of another vehicle or thing.
In Macalusa v. Hartford Acc. & Indem. Co., 343 So.2d 1217 (La.App. 4th Cir.1977), plaintiff connected battery cables to his car and to his airboat. When the airboat motor started it pushed the boat toward plaintiff who was between the car and the airboat. Plaintiff braced himself with his right arm on the car and attempted to shove the airboat away with his left arm. The propeller of the airboat chopped up the hood of the car and plaintiff's arm. Plaintiff argued that he was upon the car or was struck by the car. The court emphasized that his striking the car, rather than being struck by it, did not place him upon the car, but that he was upon the car, for coverage purposes, because he was leaning upon it in an unsuccessful effort to prevent the propeller from hitting him.
In Smith v. Girley, supra, deputy Smith was attaching one end of battery cables to his car, the other end of which he had connected to a disabled vehicle. The court emphasized that Smith was reaching over the front of his car, with its hood raised, and that his legs were touching the bumper of his car when a third car ran into the rear of the disabled car and pinned Smith between the two cars. After the accident, Smith was laying "in the hood [of his car with] ... his hands on the right fender. Both legs were pinned between the bumpers of the cars."
In Hendricks v. American Employers Insurance Co., 176 So.2d 827 (La.App. 2d Cir.1965), writ denied, a decedent was found to have been upon his truck when he was "standing against, or almost against, the truck ... reach[ing] over the closed tailgate and ... lean[ing] over the truck bed ..." to retrieve a bucket of diesel fuel which was on fire. The court refused to give a narrow meaning to the word upon, citing eight cases for that construction. 176 So.2d at 831.
In Smith, supra, the court summarized many of the cases contained in the annotations cited supra and emphasized that the word upon "must connote some physical relationship between [the claimant] and the car that enlarged the area defined by the words `entering or alighting' and the word `in'." The court further said that it was not necessary to go as far as to say that plaintiff did not have to prove he was "actually physically touching the car at the time of the injury." 255 So.2d at 751-752. In Day, we observed that it was the proximity or relationship, in time and in distance, between the claimant and the car that determines the specific coverage under the alighting from language, concluding that the determination must be made on the circumstances of the particular case. 420 So.2d at 520. Compare State Farm Mut. Auto. Ins. v. Farmers Ins., 569 S.W.2d 384 (Mo.App.1978).
Again we emphasize that Snider had alighted from the Bates truck and had entered his own truck to get it out of the mud. Snider alighted from his own truck after he drove it to the shoulder. The connecting chain between the trucks had been detached from the Bates truck and Snider was attempting to detach the chain from his truck when the accident occurred. He was not in, and was not entering into, or alighting from, the Bates truck. He had no legal or physical relationship with the Bates truck once the chain was removed from that truck. In the legal sense Snider was outside the Bates truck, a stranger to it, and was not upon the truck until the force of the impact propelled him there. Under these circumstances, we must hold that the trial court erred in finding that Snider was an insured under the Aetna policy on the Bates truck and entitled to the UM coverage.
In that respect in each case, we reverse the judgment awarding damages and costs against Aetna and render judgment in Aetna's favor rejecting the demands of the respective plaintiffs or plaintiff in each suit against Aetna. Costs in this court are assessed one-half to the respective plaintiff in each suit and one-half to State Farm. Otherwise, the judgments appealed are affirmed.
*1387 AFFIRMED in part, REVERSED and RENDERED in part.