524 So.2d 851 (1988)
Julie WILLIAMS, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 87-37.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied June 2, 1988.
*852 David M. Kaufman, William J. Ziegler, Jr. and Bernard S. Smith, Lafayette, for defendant-appellant.
Voorhies & Labbe (D. Mark Bienvenu), Lafayette, for plaintiff-appellee.
Before GUIDRY and YELVERTON, JJ., and SWIFT, J. Pro Tem.[*]
YELVERTON, Judge.
The issue in this appeal involves uninsured motorist coverage under a liability policy issued in Wyoming, on a car principally garaged there, which was in an accident in Louisiana. Julie Williams, who had just moved to Louisiana where she was injured in an automobile accident, obtained a judgment against her insurer, State Farm Mutual Automobile Insurance Company, finding coverage under the uninsured motorist provisions. State Farm appeals. We affirm.
The accident happened on May 3, 1987, in Lafayette, Louisiana. Plaintiff was injured while riding as a guest passenger in a vehicle operated by Nancy Keith. At trial the parties stipulated that the sole cause of the accident was the negligence of Nancy Keith. At the trial the only issues presented were coverage and quantum. On this appeal the only issue presented is coverage.
The parties stipulated in writing that these were the relevant facts concerning coverage:
"1. Julie Williams' policy was issued and delivered in the State of Wyoming.
"2. The policy was issued on a vehicle principally garaged in the State of Wyoming at the time of issuance.
. . . . .
"5. Nancy Keith was insured by Allstate Insurance Company, which policy of insurance provided liability coverage in the following amounts: $10,000.00 for bodily injury or death of any one person in any one accident; $20,000.00 because of bodily injury or death of two or more persons in any one accident; $10,000.00 *853 because of injury to or destruction of property.
"6. That the Allstate policy issued to Ms. Nancy Keith would meet the financial responsibility requirements of Wyoming and Louisiana.
"7. That Allstate has previously paid its policy limits to the plaintiff."
The State Farm Policy provided uninsured motorist coverage of $100,000 for one person.
Julie Williams had moved to the State of Louisiana from Wyoming about one week before this accident.
State Farm resisted coverage relying upon a specific policy provision defining an uninsured motorist. The policy provided:
"UNINSURED MOTOR VEHICLE means:
1. a land motor vehicle, the ownership, maintenance or use of which is:
a. not insured or bonded for bodily injury liability at the time of the accident; or
b. insured or bonded for bodily injury liability at the time of the accident; but
(1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; ..."
State Farm argues that plaintiff is not entitled to recover under the policy because the Keith vehicle was insured at the time of the accident at limits not less than required by the State of Wyoming, therefore under the terms of the policy the Keith vehicle was not uninsured.
The trial court rejected the defendant's argument by holding that such policy provisions are invalid in a situation where, as here, the insured's coverage exceeds the state's minimum liability requirements. The trial court found that the application of such a provision in the present situation would be against public policy.
Urging reversal, State Farm cites Snider v. Murray, 461 So.2d 1051 (La.1985), and Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983), as dispositive of this issue.
In Abel v. White the plaintiff resided and worked in Texas at the time he obtained the automobile insurance policy at issue. The insurance policy was issued in Texas for delivery in Texas to insure automobiles registered in Texas and principally garaged in Texas. The policy by its terms did not provide underinsured motorist insurance, and Texas law did not superimpose underinsured motorist coverage upon the policy. The accident occurred in Louisiana. In Louisiana, R.S. 22:1406(D)(1) imposes underinsured motorist coverage (unless rejected in writing) in the amount of the bodily injury liability limits, and the issue was whether the Louisiana statute would superimpose underinsured motorist coverage upon the Texas policy when the accident occurs in Louisiana. The Fourth Circuit held that R.S. 22:1406(D)(1) applies, by its very terms, only to policies delivered in Louisiana to insure vehicles registered or garaged in Louisiana, and not to policies delivered elsewhere to insure vehicles registered and garaged elsewhere. The court determined that a valid out-of-state contract that does not provide underinsured motorist coverage cannot in Louisiana be "interpreted" to provide such coverage.
In Snider v. Murray, supra, the policy was issued and delivered in Texas and the vehicle was principally garaged in Texas. The policyholder was then a resident of Texas, but he and his family moved to Louisiana shortly before the accident. The contract provided uninsured and underinsured motorist coverage with limits of $10,000, but contained a limiting provision which would reduce the underinsured coverage to zero, since the plaintiffs had recovered $10,000 from another driver's insurer. The plaintiffs argued that this limiting provision was not applicable, because the accident happened in Louisiana and La. R.S. 22:1406(D)(1) should be applied.
The Louisiana Supreme Court, agreeing with the Fourth Circuit's Abel decision, concluded that La.R.S. 22:1406(D)(1) simply did not impose that statute's underinsured motorist requirements upon the policy issued in Texas for delivery in Texas to a Texas resident.
*854 Since Louisiana law did not apply, the law of Texas was applied.
In both Snider and Abel the law where the policy was issued and delivered (Texas) did not impose underinsured motorist coverage in those circumstances either under the jurisprudence or by statute. The Snider opinion in the court of appeal explains Texas law on the subject, 448 So.2d 1383 (La.App. 2d Cir.1984), as does another opinion decided the same day by the same court, Wilson v. State Farm Ins. Co., 448 So.2d 1379 (La.App. 2d Cir.1984). The plaintiffs in Snider and Abel were attempting to impose coverage by the application of La.R.S. 22:1406(D)(1), an attempt rejected by the courts. The present case is distinguishable from Snider and Abel.
In the present case the defendant has not provided the court with whether or not Wyoming's statutory law would impose underinsured motorist coverage upon the liability policy in question. The defendant has also failed to introduce any cases or other sources of law from Wyoming covering this question.
The trial court in its reasons for judgment declared that the parties had not provided it with statutory definitions of what is an uninsured motorist under Wyoming law. In its appellate brief State Farm mentions that La.C.C.P. Art. 1391 calls upon the courts of this state to take judicial notice of the common law and statutes of every state. However, State Farm has now called our attention to Wyoming statutory law requiring minimum liability coverage of $10,000 per person, mandating uninsured motorist coverage equal to liability coverage, unless rejected, defining "uninsured motor vehicle" to include a case where the liability insurer of that vehicle is insolvent, and allowing for the purchase of insolvency protection.
These references to Wyoming statutes do not indicate that Wyoming law differs from that of Louisiana. La.R.S. 22:1406 contains the same provisionsand more, of course. We are not informed as to what is the state of Wyoming law, statutory or jurisprudential, regarding uninsured motorist protection as it applies to facts such as what we have before us. The closest indication which has been called to our attention is a 1975 Wyoming Supreme Court case, Ramsour v. Grange Insurance Association, 541 P.2d 35 (Wy.1975). In that case an injured person was allowed to "stack" the uninsured motorist coverage on her personal vehicle and the uninsured motorist coverage on a rental vehicle she was driving, despite the fact that both policies contained other insurance excess escape clauses. It would be an "inequity" said the Wyoming court, "to not permit `stacking' to result in a sum equal to or less than insured's damage", which "would result in a windfall to the insurer."
Absent a showing of what another state's law is, it will be presumed to be the same as Louisiana's. Johnson v. Nationwide Life Ins. Co., 388 So.2d 464 (La.App. 2nd Cir.1980); Hayden v. Guardian Life Ins. Co. of America, 500 So.2d 831 (La. App. 1st Cir.1986). In Johnson, the court said:
Although LSA-C.C.P. Art. 1391 provides that a Louisiana court shall take judicial notice of the law of other states, it is well settled that Louisiana appellate courts are not required to and ordinarily will not take notice of the law of another state in the absence of a showing by the party urging the applicability of such law of what that law is. Here, defendant made no showing of what the Missouri statutory or case law is, other than to cite a 1946 Missouri case dealing with the effect of termination of employment, not membership, under a group life insurance policy. Absent a showing of what the other state's law is, it will be presumed to be the same as Louisiana. Cambre v. St. Paul Fire and Marine Insurance Co., 331 So.2d 585 (La.App. 1st Cir.1976), writ refused 334 So.2d 434, 435 (1976); Franks v. Louisiana Health Ser. & Indem., 382 So.2d 1064 (La.App. 2d Cir.1980). Gathright v. Smith, 368 So.2d 679 (La.1979), declares that a Louisiana appellate court may, on its own initiative, inquire into another state's law where applicable, but does not hold that the appellate court must do so, and does *855 not overrule or detract from Cambre or Franks.
To the above quoted comments we might add that we tried to enlighten ourselves on the current state of Wyoming law through the limited resources of our library, but we could not. This court has neither the library, nor the manpower, nor the financial wherewithal to reliably inform ourselves on the subject, and therefore we are compelled to rely on the presumption that, if a Wyoming court were faced with the precise issue we have before us, its law would be the same as ours.
Ms. Williams in the present case proved the basic facts (they were stipulated) that would entitle her to coverage if the law of Louisiana were applicable. She was then entitled to rely on the presumed fact that the law of Wyoming which is indisputably applicable, is the same as that of Louisiana. A party whose interest is favored by a presumption need not offer other proof. La.C.C. Art. 1850.
Under Louisiana law, there is no real dispute that a negligent motorist would be considered an "uninsured" motorist when the damages to the plaintiff exceed the liability coverage on the negligent motorist's vehicle, if the policy had been issued and delivered within the state of Louisiana and uninsured motorist coverage had not been waived by the insured. La. R.S. 22:1406(D)(2)(b). Louisiana's uninsured motorist statute embodies public policy, thus any conflicting clause in a policy of insurance would be invalid. Breaux v. Gov. Emp. Ins. Co., 369 So.2d 1335 (La. 1979). Louisiana's requirement that a liability policy provide underinsured motorist coverage within the definition of "uninsured" motorist coverage, is the more modern approach, according to Appleman, Insurance Law and Practice, Chapter 209.09, § 5071.45 "Amounts of CoverageUnderinsured Coverages" p. 101.
In the present case it is presumed that Wyoming law is the same law as Louisiana's with respect to policies issued and delivered in Wyoming covering vehicles principally garaged in that state. Therefore, in the present case we find that under Wyoming law "underinsured" motorist coverage is presumed to be imposed upon all policies providing uninsured motorist coverage, just as in Louisiana, and any conflicting provision would be declared invalid as against public policy, just as in Louisiana. In the present case the provision in question conflicts with providing underinsured motorist coverage, therefore under the presumed Wyoming law such a provision is invalid, and underinsured motorist coverage is available under the policy.
We accordingly affirm the judgment of the trial court finding coverage, though not for the reasons given by the trial court, but rather for the reasons we have given above. Costs will be paid by defendant.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, Judge, dissenting.
The State Farm policy at issue in this suit was issued and delivered in the State of Wyoming and, at the time of issuance, the vehicle covered was principally garaged in the State of Wyoming. At the time of accident, the tortfeasor, Nancy Keith, was insured by Allstate Insurance Company at limits not less than that required by the State of Wyoming. Under such circumstances, the State Farm policy by its terms does not provide UM coverage to Julie Williams. Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983), and Snider v. Murray, 461 So.2d 1051 (La.1985) mandate a reversal of the trial court's judgment.
I cannot agree with my brethren of the majority that this case is distinguishable from Abel and Snider simply because the parties failed to introduce evidence of the Wyoming law and because of this failure, we are permitted to assume that Wyoming law is the same as Louisiana law.
Counsel for defendant in brief refers this court to Wyoming's Motor Vehicle Safety Responsibility Act, Section 31-9-102, which requires liability limits in the amount of $10,000.00 because of bodily injury to or death of one (1) person in any one accident, and subject to said limits for one person, in *856 the amount of $20,000.00 because of bodily injury to or death of two or more persons in any one accident. Defendant next informs this court in brief that "[t]he concept of an underinsured vehicle is foreign to Wyoming law and counsel has found no cases even attempting to put such a jurisprudential gloss on the Wyoming statutory definition of an `uninsured vehicle'." Thus, this court has been informed in brief that the State of Wyoming has no statute similar to La.R.S. 22:1406(D)(1). In Cambre v. St. Paul Fire and Marine Insurance Co., et al, 331 So.2d 585 (La.App. 1st Cir.1976), writ refused, 334 So.2d 434, 435 (La.1976), our brethren of the First Circuit stated:
"While we are cognizant of our duty to take judicial note of the law of other states pursuant to La.C.C.P. Article 1391, we view the cited statute as eliminating the necessity of proving foreign law as a fact, it does not require the courts to take judicial notice of foreign law, except when the law of another state is brought to the court's attention by the record or briefs. ...
Neither party herein has cited or relied upon, either in brief or oral argument, Mississippi statutory or jurisprudential law. Consequently, we apply the well established presumption that the applicable foreign law is the same as the law of our own state on the subject matter in question." (Citations omittedemphasis mine).
In Johnson v. Nationwide Life Ins. Co., 388 So.2d 464 (La.App. 2d Cir.1980), principally relied upon by my brethren of the majority, the court recognized that if a party relying upon the law of another state makes a showing of what that law is, the court should take judicial notice of the law of that state. La.C.C.P. art. 1391. Further, in Gathright v. Smith, 368 So.2d 679 (La.1978), our Supreme Court recognized the court's authority to inform itself, on its own initiative, of foreign law even where the opposing party was not made aware that foreign law would be relied upon. In that case, our Supreme Court stated:
"The first two paragraphs of art. 1391, provide us with the authority to inform ourselves, on our own initiative, and take judicial notice of foreign law, even when the foreign law's applicability has not been called to the attention of the trial court. See Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 12 A.L.R.2d 939 (1949); Harry L. Sheinman & Sons v. Scranton Life Ins. Co., 125 F.2d 442 (3d Cir.1942). See also Quickick, Inc. v. Quickick International, 304 So.2d 402 (1st Cir.1974), writ denied, 305 So.2d 123 (1974), application denied, 306 So.2d 310 (1974). But see Cambre v. St. Paul Fire & Marine Ins. Co., 331 So.2d 585 (1st Cir.1976), writ denied, 334 So.2d 434 (1976) (where the foreign law was not cited or relied upon in brief or oral argument). Furthermore, we recognize that the reason often stated for demanding notice in those states which require that the foreign law be pleaded, see Annot., 23 A.L. R.2d 1437, 1449, is that without such notice the opponent would not be warned beforehand that the court may take judicial notice of foreign law and might not be able to prepare himself on that law. Respondent in the instant case, although not given notice of relators' intention to rely on California law on the trial level, has been given sufficient opportunity to research the relevant law since the argument was raised in brief in the appellate court. Consequently, we may refer to California law to determine the status of funds derived from the sale of the California property."
In this case, plaintiff was given notice, both at the trial level and on appeal, that defendant would rely upon the law of Wyoming in resisting her demands.
My brethren of the majority complain that "[W]e are not informed as to what is the state of Wyoming law, statutory or jurisprudential, regarding uninsured motorist protection as it applies to facts such as what we have before us". I disagree. Defendant has informed this court that the concept of underinsured motorist protection is foreign to Wyoming law and there is no Wyoming jurisprudence supporting that concept. If there is a total absence of statutory law or jurisprudence supporting such concept, defendant can hardly cite authority *857 to support such statement. In any event, plaintiff was timely informed of defendant's intention to rely on Wyoming law and thus had sufficient opportunity to research the relevant law and jurisprudence and cite contrary Wyoming statutory law and/or jurisprudence if it exists. In my opinion, the interests of justice and the provisions of La.C.C.P. art. 1391 mandate that we take judicial notice of the fact that the laws of the State of Wyoming do not provide for underinsured motorist coverage. For these reasons, I respectfully dissent.
NOTES
[*] Judge G. William Swift, Jr., Retired, Judge Pro Tem.