700 So.2d 951 (1997)
Carl MINOR
v.
CASUALTY RECIPROCAL EXCHANGE.
No. 96 CA 2096.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
*952 S. Alfred Adams, Baton Rouge, for Plaintiff-Appellant Carl Minor.
Boris F. Navratil, Navratil, Hardy & Bourgeois, Baton Rouge, for Defendant-Appellee Casualty Reciprocal Exchange.
Michael L. Hyman, Baton Rouge, for Intervenor-Appellee Frank's Door and Building Supply Company.
Before GONZALES, PARRO and KUHN, JJ.
PARRO, Judge.
An underinsured motorist struck and injured the plaintiff as he walked from his employer's vehicle toward a convenience store to get a drink of water. The plaintiff's claim against his employer's business automobile insurance carrier was dismissed after trial, and he brings this appeal.

BACKGROUND
Carl Minor was employed by Frank's Door and Building Supply Company ("Frank's"). He and another employee were making deliveries in a truck owned by Frank's and insured by Casualty Reciprocal Exchange ("Casualty"). It was a hot day and the truck was not air-conditioned, so between deliveries, they stopped at a Circle K convenience store to get some water. Minor got out of the passenger side of the truck, walked around the front of the truck, stopped and spoke briefly with the driver, and then turned and started across the parking lot toward the store entrance. As he was crossing the lot, a college student backed out of a parking space and struck Minor, breaking his left leg. The young driver's liability insurer paid its policy limit of $25,000 and both were released.
Minor claimed damages in excess of this amount from Casualty. Casualty insured Frank's on a business automobile policy with uninsured/underinsured motorist insurance ("UM") limits of $500,000. The policy covered several company vehicles, including the truck Minor was using to make deliveries when he was injured. Frank's and "Frank Dispensire, Individual," were the only named insureds on the policy. The case was tried on the issue of whether Minor was covered under a UM provision which stated an insured included anyone "occupying" a covered auto.
After trial, the court took the case under advisement. In written reasons for judgment, the court stated:
In order for the uninsured motorist coverage to apply in the instant case the plaintiff must prove that the time and distance factors were proximate to the risk to which a person exposes himself while alighting from a vehicle. Alternatively, in order for the plaintiff to recover, there must be proof that he was on a mission related to the vehicle.
It is the opinion of this writer that the plaintiff failed to prove by a preponderance of the evidence that he should recover *953 under either of the two above mentioned theories.
The court signed a judgment dismissing Minor's suit, and denied a motion for new trial. This appeal followed.
Minor reiterates his claim of entitlement to UM coverage because he was "occupying" a covered vehicle under the policy when the accident occurred. He also asserts in briefs to this court that coverage is provided to him as a named insured under the UM endorsement to the policy.[1]

APPLICABLE LAW

STANDARD OF REVIEW
Interpretation of an insurance contract is usually a legal question. Madden v. Bourgeois, 95-2354 (La.App. 1st Cir. 6/28/96), 676 So.2d 790, 792. Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. See O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1238 (La.App. 1st Cir.1990).
However, the question of whether or not a person is "occupying" a vehicle is a mixed question of fact and law. The trial court must first make factual findings about the physical relationship of the victim to the insured vehicle. Once those facts are determined, the trial court must interpret the policy language and apply the law to the particular circumstances before the court, and may be guided by other cases which have interpreted similar policy provisions. In Smith v. Girley, 260 La. 223, 255 So.2d 748, 750 (1971), the Louisiana Supreme Court dealt with this issue and noted, "Ultimately, of course, the issue becomes one of fact...." In the recent case of Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97), 691 So.2d 665, 670, the supreme court noted again the "fact intensive process" of this inquiry.
The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).

INTERPRETATION OF INSURANCE POLICY
An insurance policy is a contract between the parties and should be construed using general rules of interpretation of contracts provided in the Louisiana Civil Code. Lewis v. Hamilton, 94-2204 (La. 4/10/95), 652 So.2d 1327, 1329. The interpretation of a contract is the determination of the common intent of the parties. The words of a contract must be given their generally prevailing meaning, and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. LSA-C.C. arts. 2045-2047; see Ledbetter v. Concord General Corp., 95-0809 (La. 1/6/96), 665 So.2d 1166, 1169, judgment amended, 95-0809 (La. 4/18/96), 671 So.2d 915. If ambiguity remains after applying general rules of construction, ambiguous provisions are to be construed against the insurer who issued the policy and in favor of the insured. See LSA-C.C. art. 2056; Crabtree v. State Farm Ins. Co., 93-0509 (La. 2/28/94), 632 So.2d 736, 741.

ANALYSIS
The pertinent provisions in the UM endorsement to the Casualty policy define an insured as:

*954 1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto"....
Throughout the policy, the word "you" refers to the named insured. "Occupying" is defined as "in, upon, getting in, on, out or off."

COVERAGE UNDER THE FIRST TWO DEFINITIONS
Minor's first contention is that he is an insured under the first two definitions of the UM endorsement. He bases this claim on certain language in a dissenting opinion in Barnes v. Thames, 578 So.2d 1155, 1171 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991), which suggested that when the named insured in a business automobile policy is a corporation, and an insured is defined as "you or any family member," the language is ambiguous. Minor asserts this definition could therefore be interpreted to include employees, as members of the corporate family. This idea was addressed in Davis v. Brock, 602 So.2d 104 (La.App. 4th Cir.), writ denied, 605 So.2d 1146 (La.1992). There the court rejected the argument, and stated the theory could not justify extending UM coverage to an employee, "while a pedestrian, not in the course and scope of his employment." Davis, 602 So.2d at 107. Minor argues this language implies that, because he was in the course and scope of his employment, he should be included within the UM coverage. This argument stretches the language of the Davis dicta, and ignores the fact that this argument was addressed and rejected by this court in Barnes, stating:
We find no merit in plaintiff's contention that since the policy in question is a business automobile policy issued to a corporation, the definition of an insured as "you or any family member" renders the policy ambiguous.
Barnes, 578 So.2d at 1163.
Casualty also points out that the policy at issue in this case includes an individual as a named insured, in addition to the corporation, so the language including family members cannot be said to be ambiguous in this context. We agree, and further note this policy clearly states that the "family member" designation applies only if the named insured is an individual. There is no ambiguity under which this definition could be expanded to include employees in the course and scope of their employment.
Recently, in Valentine, 691 So.2d 665, the Louisiana Supreme Court addressed this issue when a deputy sheriff sought coverage under his employer's UM policy for injuries he sustained while in the course and scope of his employment. The named insured in the policy was "Webster Parish Sheriff's Department." Valentine, 691 So.2d at 668-69. The court held this designation of the named insured did not extend coverage to the individual deputies. Valentine reinforces our conclusion that Minor was not included as an insured under the first two definitions of the policy.[2]
However, Minor also contends because employees, while in the course and scope of employment, are specifically excluded from coverage under the liability and medical payments provisions, the lack of such an exclusion in the UM endorsement implies that they are included in that coverage. He is partially correct. The exclusion is not in the UM endorsement because employees who are "occupying" an insured vehicle are not meant to be excluded. If the UM endorsement contained the same exclusionary language as the liability and medical payments sections, employees who would otherwise be covered because they were occupying an insured vehicle would not be covered, although anyone else occupying an insured vehicle would be covered. The exclusion is not in the UM endorsement because the intent is to cover employees, but only if they are "occupying" an insured vehicle.
In Valentine, 691 So.2d at 669, the court recognized that in a business automobile policy, *955 for purposes of UM coverage, it is possible that no individual person would be covered as a named insured, and that the only UM coverage available under the policy would be for those "occupying" a covered vehicle. The court stated:
[T]he failure to have someone designated for coverage as a "you" (a named insured) is of no moment.... Corporations ..., legal persons that are incapable of sustaining bodily injury damage, buy UM policies in which the corporation ... is the named insured. As in the instant case, coverage is provided under these policies for anyone "occupying" a covered auto.
Valentine, 691 So.2d at 669. The court found it was reasonable to conclude that the Sheriff in Valentine intended to cover his deputies only when they were most at risk, while driving or otherwise occupying their patrol cars.
Likewise, we determine in the instant case, it is reasonable to conclude the UM endorsement to the policy did not specifically exclude employees in the course and scope of their employment for two reasons: 1) because they were clearly not included in the first two definitions of an insured, so did not need to be excluded, and; 2) because the intent was to include them in the third definition only. Accordingly, Minor's argument that he had UM coverage under the first two definitions is without merit.

COVERAGE UNDER THE THIRD DEFINITION
Having concluded Minor was not covered under the UM endorsement as an insured under the first two definitions, we examine whether he is covered as a person "occupying" a covered auto. The trial court did not enumerate the factual findings upon which it concluded Minor did not satisfy his burden of proof, either that the time and distance factors were not proximate to the risk to which a person exposes himself while alighting from a vehicle, or that he was not on a mission related to the vehicle. This court must first determine whether the relevant jurisprudence indeed establishes these as the factors the plaintiff must prove, and must then review the record to see if there is a reasonable factual basis for the trial court's conclusion.

Analysis of the Jurisprudence
Many of the cases examining whether a plaintiff was "occupying" a vehicle for the purpose of UM coverage found coverage if there was any evidence of physical contact with the vehicle, regardless of the specific policy language. See, e.g., Smith, 255 So.2d at 751; Hastings v. Int'l. Service Ins. Co., 490 So.2d 656 (La.App. 2nd Cir.), writ denied, 493 So.2d 1223 (La.1986); Carter v. Travelers Indemnity Co., 146 So.2d 257 (La. App. 2nd Cir.1962); and Martinez v. Great American Ins. Co., 499 So.2d 364 (La.App. 4th Cir.1986), reversed in part on other grounds, 503 So.2d 1005 and 503 So.2d 1006 (La.1987) (evidence was conflicting on physical contact).
However, beginning with Hendricks v. American Employers Ins. Co., 176 So.2d 827 (La.App. 2nd Cir.), writ refused, 248 La. 415, 179 So.2d 15 (1965), the courts moved toward a consideration of other factors besides physical contact in interpreting "occupying" policy language. In Hendricks, the plaintiff was seriously burned as he leaned over the tailgate of a truck and tried to lift a bucket of burning diesel fuel from the truck bed. The court noted the word "upon" was subject to more than one accepted meaning and found, although the plaintiff was not in physical contact, he was "upon the truck in the only way he could have been under the existing circumstances." Hendricks, 176 So.2d at 831. In Smith, 255 So.2d at 751, the Louisiana Supreme Court recognized this developing trend toward a more expansive interpretation of "occupying" policy language and commented favorably on the Hendricks decision.
This court denied coverage in Breard v. Haynes, 394 So.2d 1282 (La.App. 1st Cir.), writ denied, 399 So.2d 598 (La.1981). There the plaintiff was a passenger in an automobile involved in a minor collision. He left the insured vehicle, walked about seventy feet to a position behind a police car, and was standing there talking with the police officer when another vehicle swerved and struck him. The court found the plaintiff was not occupying the insured vehicle, noting there was no *956 physical contact with the vehicle, and emphasizing that the physical relationship was too attenuated in time and space for him to be "alighting from" it.
The physical relationship between the person and the vehicle was again stressed in Day v. Coca-Cola Bottling Co., Inc., 420 So.2d 518 (La.App. 2nd Cir.1982). There the plaintiff, Day, saw a car skid off the road and stopped his insured truck to offer assistance. As Day walked to the rear of his truck toward the other vehicle, the car tried to maneuver back onto the highway. An approaching Coca-Cola truck jack-knifed, sandwiching Day between it and his parked truck. The court noted "it is the relationship between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting, that determines this specific coverage." Day, 420 So.2d at 520. The court concluded Day was within the zone of risk encompassed by "alighting from" his truck. Because the spatial and temporal relationship was not attenuated, the court found he was occupying the truck.
Although the accident victim in Snider v. Kemper Ins. Co., 448 So.2d 1383 (La.App. 2nd Cir.1984), reversed in part on other grounds, 461 So.2d 1051 (La.1985), was close to the insured vehicle in time and space, the court distinguished Day and found, "[h]e had no legal or physical relationship" with the insured vehicle. Snider, 448 So.2d at 1386. The insured truck had pulled the Snider's vehicle out of some mud and the connecting chain had been detached from the insured truck. Snider was kneeling in front of his own vehicle, trying to detach the chain from it, when he was struck. The court stated, "In the legal sense Snider was outside the [insured] truck, a stranger to it, and was not `upon' the truck until the force of the impact propelled him there." Snider, 448 So.2d at 1386. A similar analysis was used in Washington v. Allstate Ins. Co., 499 So.2d 1255 (La.App. 4th Cir.1986), where the court found the victim was merely standing between his own car and the insured vehicle when the accident occurred, and had no physical or legal relationship to it. In these cases, it appears the key factor considered by the courts was the lack of any purposeful relationship between the victim and the insured vehicle, when the victim's attention was not directed toward it.
In Crear v. Nat'l. Fire & Marine Ins. Co., 469 So.2d 329 (La.App. 2nd Cir.), writ denied, 475 So.2d 364, reconsideration denied, 477 So.2d 698 (La.1985), the court denied coverage. There the plaintiff got out of the insured van, walked toward the post office, and was halfway across the drive-through when a car backed out and struck him. Distinguishing Day, the court stated,
When the time and distance factors are no longer proximate to the risk to which a person exposes himself while alighting from a vehicle, coverage ceases. The person at some time and at some distance "loses" the UM protection....
Crear, 469 So.2d at 336-37.
The Louisiana Supreme Court focused on the zone of risk in Westerfield v. LaFleur, 493 So.2d 600 (La.1986), in determining policy language may cover a child "entering into" a school bus when the accident occurred. The five-year-old child was crossing a two-lane road toward the stopped school bus and was about fifteen feet from it when she was struck and killed by a truck. The relationship of the victim to the vehicle, her purpose and movement toward the vehicle, and the zone of risk accompanying her activities were the relevant factors in the case.
The plaintiff in White v. Williams, 563 So.2d 1316 (La.App. 3rd Cir.), writ denied, 568 So.2d 1056 (La.1990), was struck while walking from a convenience store to the insured vehicle after paying for gas he had just pumped into it. He was about six or seven feet from the car when he was hit and the entire sequence of events  pumping gas and paying the cashier  took between five and ten minutes. The appellate court adopted the analysis of the trial court, which stated:
[P]laintiff had never abandoned his relationship as passenger of the insured vehicle. His physical departure was solely for the purpose of performing an act that was physically and directly related to the car. He never turned aside from this mission and was in fact in the process of resuming *957 his physical contact with the vehicle when injured.
White, 563 So.2d at 1318.
In Armstrong v. Hanover Ins. Co., 614 So.2d 312 (La.App. 4th Cir.), writ denied, 617 So.2d 908 (La.1993), the victim was killed while working as a flag man alongside a highway. The two insured vehicles were the tractor for which he was acting as flag man and a company pickup truck assigned to him in connection with the job. The policy defined "occupying" exactly as it is defined in the present case  "in, upon, getting in, on, out or off." The court found these words were clear and explicit and their application did not lead to any absurd consequences, so no further interpretation was necessary. Because he was neither in, upon, getting in, getting on, getting out, nor getting off of either vehicle, he was not covered.
The most recent case to address this issue was Valentine, 691 So.2d 665. Again, the policy definition of "occupying" was the same as it is in the instant case. The supreme court found the policy language was clear and unambiguous, and concluded the deputy sheriff, who had left the insured vehicle and gone to the middle of the road to direct traffic when he was injured, was not "occupying" the vehicle. Valentine, 691 So.2d at 671.
A review of the relevant jurisprudence establishes the importance of examining the particular policy language used to define "occupying." However, based on the Armstrong and Valentine cases, it appears the jurisprudence is moving away from an expansive interpretation of such policy provisions, and will evaluate the language using the ordinary meaning of the words in the policy.

Application To The Instant Case
We conclude the trial court correctly identified the relevant factors to use in determining whether or not Minor was "occupying" the insured vehicle. Applying these factors to the instant case, we note the following facts which impact the relationship between the victim and the insured vehicle at the time of the accident:
1. Minor was in the course and scope of his employment and was using the insured truck as part of his work;
2. He had gotten out of the truck within moments before he was hit;
3. He was walking away from the truck, and was between 6 to 10 feet from it;
4. His purpose at the moment of impact was directed away from the truck, and had nothing to do with the truck.
Based on these facts, we conclude the trial court was correct in determining Minor was not "occupying" the insured vehicle. He had no physical contact with it at the time of the accident. More importantly, his physical and intentional relationship to the vehicle had become attenuated. Minor's trip toward the Circle K involved activity directed toward his own comfort to enable him to better continue his work. As in the Crear case, Minor's direction was away from the truck, not toward it, and his purpose was not directly related to it. Unlike the plaintiff in White, he was not involved in a mission which would make it possible for him to continue driving the insured vehicle, nor was he heading toward it. Most importantly, the record shows Minor was clearly not "in" the truck, nor was he "upon" it or "getting in" it. And because he was already some distance from the truck and approaching the store entrance, he was no longer "getting out" of or "getting off" of the vehicle when he was hit. Finally, Minor was no longer within the zone of risk attendant to getting out or off the vehicle.
Given these facts and circumstances, there was a reasonable factual basis for the finding of the trial court that Minor did not prove he was "in, upon, getting in, on, out or off" the insured vehicle, as that language has been interpreted in the jurisprudence. The trial court's determination was neither manifestly erroneous nor legally incorrect. Accordingly, he was not an insured under this provision of the UM endorsement.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court. All costs of this appeal are to be paid by Minor.
AFFIRMED.
NOTES
[1] Minor did not make this argument to the trial court, and Casualty urges this court not to consider it for that reason. However, this issue is purely a question of policy interpretation; it is a legal issue dependent only upon policy language. The policy is in the record. Under LSA-C.C.P. art. 862, a party is not required to plead a "theory of the case," and LSA-C.C.P. art. 2164 allows this court to render any judgment which is just, legal, and proper upon the record on appeal. Accordingly, this court will address this argument.
[2] The Valentine opinion also lists a number of cases in which Louisiana courts have held that when the named insured is a political entity or a corporation, coverage is restricted to the named insured and does not extend to the members/employees of the political entity or employees of the corporation. See Valentine, 691 So.2d at 669, n. 3.