| pSIMON, Judge Pro Tem.
Cari Haglund appeals a judgment that granted summary judgment in favor of TC Properties of Baton Rouge, L.L.C., dismissing his claim for damages for breach of contract.
FACTS AND PROCEDURAL HISTORY
TC Properties of Baton Rouge, L.L.C. (TC Properties) was the owner of a sixty-foot sailing vessel, known as “The Atlantis,” which was severely damaged in Hurricane Georges in the fall of 1998. Carl Haglund was in the business of buying damaged vessels and repairing them for resale. In November of 1998, after some conversation between the parties, TC Properties drafted a letter agreement, which was “agreed and accepted” by Ha-glund, whereby Haglund paid $5,000 for any right of first refusal TC Properties may have to purchase The Atlantis from its insurer. Certain terms of the agreement allowed TC Properties to declare the agreement null. Two provisions are pertinent to this motion for summary judgment. The first provision is:
Anything contained herein to the contrary notwithstanding, in the event TC Properties of Baton Rouge, LLC, determines (in its sole discretion) that the assignment of the right of first refusal contemplated herein may in any way impair its ability to settle its insurance claim with the insurer, or in any way reduces the amount of the claim otherwise due TC Properties of Baton Rouge, LLC, by the insurer, then TC properties of Baton Rouge, LLC may in its discretion, return the price paid by you hereunder to you, whereupon this agreement and the assignment of the right of first refusal shall be deemed null and void in all respects.
The second provision binds Haglund, as follows:
Furthermore, you covenant and agree to not communicate with or contact the insurer or the adjuster(s), without the prior written consent of TC Properties of Baton Rouge, LLC, and to keep the terms of this agreement strictly confidential.
On December 14, 1998, Robby Turner, on behalf of TC Properties, sent a letter to Haglund terminating the agreement. The letter stated:
We have recently learned that without our consent you have had discussions with Bay Marine Boat Works, Ocean Marine Group and most importantly Wager & Associates (the insurance adjuster of the claim). Therefore, as a result of you breaking this signed confidentiality agreement, I am regretfully returning your cashier’s check .... Please ^consider this agreement and the assignment of the right of first refusal null and void in all respects.
Haglund brought suit for injunction, specific performance, and damages, alleging wrongful termination of the agreement. The first two claims were voluntarily dismissed, leaving intact the claim for damages.
TC Properties filed a motion for summary judgment, arguing that there was no genuine issue of material fact that TC Properties had the right to terminate the contract between them. In an affidavit attached thereto, Turner, the authorized representative of TC Properties, attested that he learned Haglund was having unauthorized conversations with third persons, including insurance adjusters, in violation of the agreement. He became concerned that the assignment of the right of first refusal would impair the ability of TC Properties to settle its claim with the insurer and, therefore, sent notice of termination.
In a countervailing affidavit, Haglund denied that he had breached the agreement, in effect rephrasing the terms of the contract as follows: “the agreement may be deemed null and void if the assignment of the right of first refusal impairs TC Properties’ ability to settle its insurance claim with the insurer, or if said assign *887 ment reduces the amount of the claim due by the insurer to TC Properties.” In brief, Haglund argued that the issue of whether or not there was, in fact, an impairment of the right to settle the claim required trial on the merits.
The trial court granted the motion for summary judgment, dismissing Haglund’s claim at his cost. Haglund appeals.
STANDARD OF APPELLATE REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. A motion for summary judgment is properly granted when the pleadings, depositions, |4answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. See Minor v. Casualty Reciprocal Exch., 96-2096 (La.App. 1 Cir. 9/19/97), 700 So.2d 951, 953, writ denied, 97-2585 (La.12/19/97), 706 So.2d 463. Interpretation of a contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1036, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29; Domingue v. Reliance Ins. Co., 619 So.2d 1220, 1223 (La.App. 3 Cir.1993); Alford v. Kaiser, 589 So.2d 546, 548 (La.App. 1 Cir.1991), writ denied, 594 So.2d 893 (La.1992).
INTERPRETATION OF THE CONTRACT
The law of contract interpretation is succinctly stated in the case of Sanders, 696 So.2d at 1036:
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 16 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045; Martin Exploration Company v. Amoco Production Company, 93-0349, p. 4 (La.App. 1st Cir.5/20/94), 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94), 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App. 1st Cir.4/8/94), 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94), 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479.
The agreement between Haglund and TC Properties clearly and unconditionally obligates the parties “to keep the terms of the agreement strictly confidential.” Turner’s affidavit states that he learned of a breach of that confidentiality. The countervailing | ¡¡affidavit submitted by Haglund does not directly refute the statement. Under the terms of the agreement and Louisiana law, TC Properties had the right to consider the contract dissolved when Haglund violated the confidentiality agreement. See La. C.C. art. 2016; Owens v. Robinson, 329 So.2d 766 (La.App. 2 Cir.1976).
Haglund advances three reasons why this contract should not be interpreted ac *888 cording to its terms. First, he contends that a requirement for actual impairment of the right to settle was the true intent of the parties. Second, he contends that the interpretation advanced by TC Properties is unreasonable, would lead to absurd consequences, and would allow one party to withdraw from an obligation on a whim. Finally, Haglund contends that the oral contact with the insurance adjuster was not a violation of the agreement, because the conversation concerned other matters.
The provisions of the letter agreement between Haglund and TC Properties are clear and unambiguous. Any reasonable signatory would understand the provision that TC Properties had the right to terminate for breach of confidentiality. Turner attested that an unauthorized conversation occurred. The countervailing affidavit did not refute that statement. In the absence of any ambiguity, the contract is the law between the parties and justifies termination. La. C.C. art. 1983.[2]
This contract contains a suspensive condition. See La. C.C. art. 1767. In the event TC Properties makes a certain determination, TC Properties may return the payment and terminate the deal. A sus-pensive condition that depends solely on the whim of the obligor may be null. La. C.C. art. 1770. However, as the comments to Civil Code article 1770 make clear, there is a distinction between a suspensive condition dependent on the obligor’s wishing or not wishing something, and one that the obligor |fimay or may not bring about after a considered weighing of interests.[3] The first is not valid; the second is. In this case, Turner’s affidavit asserts that the decision was made based upon information that confidentiality had been breached and his judgment that this breach might impair the right to settle with the insurer. It is, therefore, a valid suspensive condition.
Haglund further argues that a trial on the merits is required to determine if the conversation which took place was, in actuality, a breach of confidentiality. In his version of events, supported by a letter of November 24, 1998, to TC Properties, the adjuster mentioned to Haglund that he would be handling the claim on The Atlantis. However, neither the letter nor the affidavit in opposition directly address the other side of the conversation. Even if an actual breach of confidentiality were required by the terms of the agreement between the parties, the affidavit is silent about the response made by Haglund. Accordingly, the affidavit is not sufficient to defeat the motion for summary judgment.
DECREE
The judgnent of the trial court, granting summary judgment in favor of TC Properties of Baton Rouge, L.L.C., and dismissing the suit for damages by Carl Haglund, is affirmed. All costs of the appeal are assessed against Carl Haglund.
AFFIRMED.

. For findings that terms are incredible or ambiguous, see, for example, Burt v. Hebert, 338 So.2d 717 (La.App. 1 Cir.1976)(building contractor assuming all overrun costs) and the innumerable cases on rejection of uninsured motorist coverage in automobile insurance policies.

. Thus, in the traditional example, an obligation to buy a house if the obligor moves to Paris is valid, rather than null, because it is assumed that moving to Paris or not will be decided according to serious reasons, such as obtaining a position there or securing admission to a school in that city. It is assumed, in other words, -that the obligor will not decide not to move to Paris for the sole purpose of deceiving the other party. See 3 Toullier, Le droit civil francais 508-509 (1833). See comment (d) to Article 1770. In this matter, the concern about an effect on the settlement is such a "serious reason.”