MAX SMITH AND WESTENN, INC.
v.
APPLIED CONCEPTS, INC.
No. 2008 CA 2138.
Court of Appeals of Louisiana, First Circuit.
June 17, 2009.
Not Designated for Publication
JUDE C. BURSAVICH, CARROLL DEVILLIER, Jr., Attorneys for the Plaintiffs, Appellants-Max Smith and WesTenn, Inc.
ROBERT J. DAVID, Jr., F. DOUGLAS ORTEGO, MICHELLE K. BUFORD, SUE NATIONS, Attorneys for the Defendant, Appellee-Applied Concepts, Incorporated.
Before PETTIGREW, McDONALD, HUGHES, JJ.
McDONALD, J.
The plaintiffs in a breach of contract case appeal a judgment in the Twenty-Second Judicial District Court granting summary judgment on behalf of the defendant. For the following reasons, the judgment is affirmed.
On October 22, 1999, Applied Concepts, Inc., (ACI) entered into an agreement with WesTenn, Inc. and Max Smith, the owner of WesTenn. ACI is an Ohio business corporation that manufactures electronic Bingo equipment for distribution in Louisiana and other states. Prior to the agreement, Smith was actively involved in the bingo industry in Louisiana and had a lengthy business relationship with ACI as an independent contractor. Due to a change in Louisiana law pertaining to the manufacture and distribution of Bingo equipment, ACI had to contract with a Louisiana licensed distributor to continue distributing its equipment in Louisiana and could not maintain its former relationship with Smith.
Pursuant to the agreement, ACI would pay WesTenn and Smith the sum of $2,500.00 on October 29, 1999, and issue checks in the amount of $2,500.00 on the 15th of successive months. In exchange WesTenn and Smith agreed to the following:
1. WesTenn and Smith were not to enter into any employment positions in the Bingo Industry.
2. WesTenn and Smith were not to interfere with any of ACI's business operations.
3. WesTenn and Smith agreed that information related to the Bingo Mate 2000 system was proprietary to ACI, and WesTenn and Smith agreed to hold in confidence any and all information disclosed to Smith by ACI and not to divulge this information to any third party.
4. WesTenn and Smith agreed that the information disclosed by ACI relating to its business practices in marketing the Bingo Mate 2000 was proprietary to ACI, and WesTenn and Smith agreed to hold in confidence any and all information disclosed by ACI and not to divulge this information to any third party.
Both parties honored the agreement from its inception until August 2005. In August 2005, Hurricane Katrina made landfall in Louisiana, followed shortly by Hurricane Rita. The hurricanes severely impacted the bingo industry in Louisiana. Beginning in October 2005, the monthly payment to Smith was reduced to $1,000.00. In early 2006, ACI and Smith attempted to renegotiate the terms of the contract. On March 20, 2006, Smith sent a letter to ACI's president, Frank Tedeschi, advising that he could not agree to the terms ACI wanted in the new contract. Smith indicated that he was quite comfortable with the October 1999 agreement, and was prepared to meet the obligations it contained.
In April 2006, ACI advised Smith that it intended to terminate the agreement. On June 12, 2006, counsel for ACI sent a letter to counsel for Smith, advising that while they were prepared to discuss an amicable termination of the agreement, they were not prepared to continue payments to Smith. The payments to Smith were not made after June 12, 2006.
In December 2006, Smith filed suit against ACI alleging breach of contract, bad faith failure to perform ACI's obligations, detrimental reliance, and unjust enrichment. In February 2008, Smith filed a motion for partial summary judgment on the breach of contract claims. In April 2008, ACI filed a cross-motion for summary judgment.
The motions for summary judgment were heard on June 5, 2008. After hearing, the trial court granted the defendant's motion for summary judgment, finding that the agreement at issue was a non-compete agreement, and dismissed plaintiffs' claims with prejudice. The plaintiffs appeal alleging that the trial court erred in finding that the agreement was an unenforceable non-compete agreement and in not granting the plaintiffs' claims for breach of contract.

DISCUSSION
Plaintiffs point out that ACI executed the agreement and, for six years, honored the agreements' obligations. They contend ACI now wants to be released from the obligations contained therein and is asking the court to relieve it of a bad bargain, which it is not the province of the courts to do. They maintain that legal agreements have the effect of law[1] and that freedom of contract signifies that parties to an agreement have the right and power to construct their own bargains.[2] The plaintiffs further maintain that the agreement at issue is not a non-compete agreement subject to the provisions of La. R.S. 23:921. It does not conform to the legal requirement that such contracts be limited to specified parishes or municipalities, or to other specific requirements, e.g., that the prohibition against competing be limited to a two-year period.
ACI agrees with Smith's contention that parties are free to contract; subject, however, to instances where the government places restrictions for reasons of public policy. ACI also agrees that the contract does not meet the statutory requirements for a non-compete agreement. It argues, however, that the failure to conform to the statutory requirements for non-compete agreements makes the agreement null and void from its inception because Louisiana has a strong public policy against noncompetition agreements and will only recognize ones drafted in accordance with the statute. ACI maintains that their intention and purpose in entering into the agreement with Smith was to prevent competition and interference by Smith and to prevent disclosure of confidential, proprietary information obtained by him during his business relationship with ACI.
One issue before us then, is whether the agreement at issue is a non-compete agreement that is void for failure to meet statutory requirements. The trial court found that the agreement was a non-compete agreement, and dismissed plaintiffs' claims as the agreement was not enforceable because it did not meet the requirements of La. R.S. 23:921. We note, however, several significant distinctions here from the non-compete agreements that have been examined in the jurisprudence.
Initially, we recognize Louisiana's longstanding public policy disfavoring noncompetition agreements and the jurisprudence restricting or severely limiting them as articulated by the supreme court in SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La. 6/29/01), 808 So.2d 294. In SWAT 24, the court stated that the policy is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. SWAT 24, 808 So.2d 294, 298. Which brings us to the first distinction between the agreement at issue here and other non-compete agreements: the underlying basis for the public policy is not applicable. This agreement paid Smith $2,500.00 per month, so he did not contractually deprive himself of the ability to support himself. More importantly, the provisions of the agreement did not prohibit Smith from competing. As noted by the plaintiffs, both WesTenn and Smith were free to compete with ACI. In that event, however, the agreement would be terminated, and ACI's obligation to pay Smith $2,500.00 per month would be extinguished. The effect of this contractual provision, as noted by plaintiffs, is to deprive ACI of the right to injunctive relief to enforce the contract, which further distinguishes it from standard non-compete agreements.
The trial court granted ACI's motion for summary judgment, which necessitated a finding that there were no genuine issues of material fact and that ACI was entitled to judgment as a matter of law. La. C.C.P. art. 966. An appellate court's review of the granting of a summary judgment is de novo with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, XXXX-XXXX (La. 2/26/08), 977 So.2d 880, 882. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La. 6/25/04), 876 So.2d 764, 765.
Considering the subject agreement's departures from standard non-compete agreements, i.e., the agreement to compensate the plaintiffs and the lack of a prohibition against competing, we cannot say, based on the record before us, that ACI is entitled to judgment as a matter of law. ACI argues, however, that whether the agreement is a non-compete agreement or is simply a "generic" contract, it is unquestionable that it does not have a definite term and has been lawfully terminated by ACI.
A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party. La. C.C. Article 2024. The termination provisions of this contract provide:
C. Termination
C1. Upon the mutual agreement of ACI and the founder of WT, Mr. Max Smith.
C2. Upon the death of Max Smith.
C3. If WT or Max Smith violates any of the conditions of this agreement.
Max Smith was 67 years old at the time he entered into this agreement. It is his position that as long as he continues to fulfill the contractual obligations, the contract will continue and will end at his death. ACI maintains that even if the contract is terminable at Smith's death, Louisiana law on obligations is that lifetime contracts are treated as contracts for an indefinite term, terminable at will be either party upon giving reasonable notice, citing Jones v. Crescent City Health and Racquetball Club, 489 So.2d 381, 384 (La. App. 5 Cir. 1986). Plaintiffs maintain that in this case La. C.C. article 2024 does not apply because the parties provided for termination as stated above; therefore, the contract can only be terminated in accordance with those provisions.
Upon review of the contract, we find that the provisions regarding termination address how the agreement is terminated, not when. We note that the agreement was between ACI and both WesTenn, Inc. and Max Smith. WesTenn, Inc. would arguably have the right to continue to honor the obligations and demand payment from ACI were it not for the provision terminating the agreement upon Max Smith's death. We find that this is a contract of unspecified duration, terminable by either party in accordance with La. C. C. Article 2024. We further find that the notice in this case was reasonable.
Based on the foregoing, we affirm the judgment of the trial court granting Applied Concepts, Inc.'s motion for summary judgment and denying the motion for summary judgment of the plaintiffs. Costs of this appeal are assessed to the plaintiffs.
ACI answered the appeal asking this court to award additional costs necessitated by the appeal, including reasonable attorney's fees. We do not find the appeal to be frivolous and decline to award attorney's fees.
AFFIRMED.
NOTES
[1] Haglund v. TC Properties of Baton Rouge, L.L.C., 99-2323 (La. App. 1 Cir. 11/3/00), 770 So.2d 885, 887.
[2] Sunrise Const. & Development Corp. v. Coast Waterworks, Inc., XXXX-XXXX (La. App. 1 Cir. 6/22/01), 806 So.2d 1, 5, writ denied, 2001-2577 (La. 1/11/02), 807 So.2d 235.